**Joshuway DAVIS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 3540.

Supreme Court of Alaska.

April 14, 1978.

Dana Fabe, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Eugene B. Cyrus, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and

Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR and MATTHEWS, Justices.

## OPINION

RABINOWITZ, Justice.

After trial by jury in 1973, Joshuway Davis was convicted on five counts of selling heroin and one count of possessing heroin. The superior court sentenced Davis to serve a term of ten years, the maximum, on each count. The sentences on two of the counts were made to run consecutively and the other three counts to run concurrently. Thus, the total term of imprisonment ordered was twenty years. The superior court further determined that Davis was to be ineligible for parole until he had served five years.

In *Davis v. State*, 525 P.2d 541 (Alaska 1974), we affirmed these heroin convictions. Subsequently, in *Davis v. State*, 566 P.2d 640, 644–45 (Alaska 1977), we held that the imposition of the consecutive sentences for these heroin offenses did not violate the constitutional prohibition against double jeopardy and that consecutive sentences were "amply justified even under the stringent restrictions which the ABA Standards would impose on the use of such sentences." [1] Additionally, in *Davis*, we affirmed that portion of the superior court's sentence which provided that Davis must serve five years in prison before becoming eligible for parole. [2] In this appeal, Davis

---

1. A.B.A. Standards, Sentencing Alternatives and Procedures § 3.4(b) (Approved Draft 1968) reads as follows:

 Consecutive sentences are rarely appropriate. Authority to impose a consecutive sentence should be circumscribed by the following statutory limitations:

 (i) The aggregate maximum of consecutive terms should not be permitted to exceed the term authorized for an habitual offender (section 3.3) for the most serious of the offenses involved. If there is no provision for an habitual offender for the offenses involved, there should be a ceiling on the aggregate of consecutive terms which is related to the severity of the offenses involved; and

 (ii) The aggregate minimum of consecutive terms should be governed by the limitations stated in section 3.2; and

 (iii) The court should not be authorized to impose a consecutive sentence until a presentence report (sections 4.1–4.5), supplemented by a report of the examination of the defendant's mental, emotional and physical condition (section 4.6), has been obtained and considered; and

 (iv) Imposition of a consecutive sentence should require the affirmative action of the sentencing court. The court should be authorized to impose a consecutive sentence only after a finding that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant. These limitations should also apply to any sentence for an offense committed prior to the imposition of sentence for another offense, whether the previous sentence for the other offense has been served or remains to be served.

Although we have cited the standard with approval in *Cleary v. State*, 548 P.2d 952, 956 (Alaska 1976), we stressed in *Mutschler v. State*, 560 P.2d 377, 381 (Alaska 1977), that the ABA Standards are not a code which we are bound to follow in all circumstances. *Davis v. State*, 566 P.2d 640, 644 (Alaska 1977).

2. In *Davis v. State*, 566 P.2d 640, 644–45 (Alaska 1977), we said:

 Finally, Judge Burke specified that Davis must serve five years in prison before becoming eligible for parole. At the time of sentencing, AS 33.15.230(a)(1) provided that such a minimum imposed by the judge shall not exceed one-third of the maximum sentence he imposes. Davis asserts that this statute limits the minimum term to one-third of ten years, or 3 years and 4 months, since each of the individual terms to which Davis was sentenced was ten years. The state claims that this means one-third of the total of 20 years, in which case Judge Burke's 5-year minimum was permissible.

 Once again, our recent opinion in *Thomas v. State* [566 P.2d 630 (Alaska 1977)] is dispositive of this contention. In that case, we adopted the construction of AS 33.15.230(a) which the state offers here.

 AS 33.15.230(a) was subsequently amended in 1974, 1974 Alaska Sess.Laws ch. 110 § 3, so that while previously at sentencing, in designating a mandatory period of incarceration before becoming eligible for parole, the court could not designate a period more than one-third of the sentence. At present, a court cannot designate a period less than one-third of the sentence given.

claims that his sentence is excessive,[3] contending that the superior court "relied . . heavily" on two prior convictions which were subsequently reversed and that he should not have been classified as "the worst type of drug offender." *Waters v. State*, 483 P.2d 199, 201 (Alaska 1971).

In support of his first contention, Davis refers this court to *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592, 30 L.Ed.2d 592 (1972). In *Tucker*, three prior felony convictions were given explicit attention and significant weight by the judge at the sentencing proceeding for a conviction of armed bank robbery. *Id.*, 404 U.S. at 444, 92 S.Ct. at 590, 30 L.Ed.2d at 594. Later, two of the prior convictions relied on were found to be constitutionally invalid for the reason that Tucker had not been represented by counsel and had "been neither advised of his right to legal assistance nor did he intelligently and understandingly waive this right to the assistance of counsel." *Id.*, 404 U.S. at 445, 92 S.Ct. at 590, 30 L.Ed.2d at 595. The Supreme Court held that absent the two unconstitutional prior convictions heavily relied on in sentencing, the sentencing court might have given Tucker a different sentence than that which it imposed. Thus, the Supreme Court remanded the case for redetermination.

In the instant case, Davis contends that the superior court relied heavily upon two 1970 convictions for burglary not in a dwelling and larceny in determining his sentence. These convictions were later reversed by the United States Supreme Court on sixth amendment grounds.[4] Davis claims, therefore, that *Tucker* is dispositive and requires that he be resentenced. We disagree.

At the time of sentencing in the case at bar as to the five heroin convictions, Davis had been granted certiorari by the Supreme Court in regard to the 1970 burglary and larceny convictions. This fact was brought to the superior court's attention by the author of the presentence report, prior to sentencing in the instant case.[5] Nowhere in the record is there an indication that undue consideration was given to the convictions which were invalidated by the Supreme Court of the United States.[6] Although the sentencing court mentioned the convictions in question, we are not persuaded that they were given specific consideration in the fashioning of Davis' sentence. The following remarks by the superior court just prior to the pronouncement of sentence indicate that the court was reviewing Davis' prior record as a whole and not placing specific emphasis on any particular conviction or convictions:

Mr. Davis' past conduct and the evidence in the instant case convinces me that Mr.

**3.** In *Davis v. State*, 566 P.2d 640, 643 (Alaska 1977), we held as untimely Davis' attempt to appeal on the ground that his sentence was excessive. In an accompanying footnote to this holding we noted that there had been considerable confusion between Davis and the Public Defender Agency at the time of Davis' original appeal as to whether the question of excessive sentence was being asserted. At that time the record contained no indication why a sentence appeal was not filed. Subsequently, in the interests of justice, we granted Davis' request to be permitted to file a late sentence appeal.

**4.** *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

**5.** Davis' attorney at the sentencing proceeding informed the superior court that two prior 1961 convictions for burglary not in a dwelling and larceny had been reversed by this court. (*Davis v. State*, 369 P.2d 879 (Alaska 1962).) He also informed the superior court that a 1964

conviction for burglary not in a dwelling in Juneau was apparently in error. Both the 1961 and 1964 convictions were contained in the presentence report. These "convictions" were struck from the report by the superior court prior to the imposition of sentence.

**6.** The primary responsibility for sentencing rests with the trial court. Our scope of appellate review requires that we make our own examination of the record, focusing on the need for protecting the public, the nature of the crime, and the defendant's character. *Cleary v. State*, 548 P.2d 952, 954 (Alaska 1976).

*See generally, Whitton v. State*, 533 P.2d 266, 269 (Alaska 1975); *Lemon v. State*, 522 P.2d 160, 163–64 (Alaska 1974) (police "contacts" were contained in presentence reports; the sentencing judges were aware of the results of these "contacts" and removed "the spectre of prejudicial error").

Davis has gone well down the road. I believe that he is probably beyond redemption . . . .. The prior record indicates that it takes a great deal to deter Mr. Davis from antisocial conduct, the nature of which is pretty well spread over the entire criminal law. It involves for example, a forgery type offense, burglary, offenses against property and habitation, assault and battery, breach of the peace, and now he's into the narcotics business. I think it's required in order to protect society from Mr. Davis that he be incarcerated. His isolation to prevent criminal conduct during the period of confinement seems to me is reasonable and necessary.[7]

If the trial judge had relied on the convictions that were later found to be constitutionally invalid, he would doubtlessly have granted the motions to modify sentence. Assuming, *arguendo*, error on the superior court's part, such error, in our view, must be characterized as harmless error in the light of Davis' extensive prior criminal record.[8]

■ Davis next contends that the superior court improperly characterized him as "the worst type of drug offender" and thus imposition of the maximum sentence on each count was excessive.[9] This court, in *Waters v. State*, 483 P.2d 199, 201 (Alaska 1971), adopted a classification embodying four groups of drug offenders whose crimes are in descending order of seriousness, namely:

1. Smuggling or sale of large quantities of narcotics or possession of large quantities for sale.

2. Smuggling or sale of small quantities of narcotics, or possession of small quantities for sale.

3. Possession of narcotics without intent to sell.

4. Marijuana offenses.

The superior court concluded that Davis fitted category one, the most serious drug offense. In *Huff v. State*, 568 P.2d 1014, 1017 (Alaska 1977), we observed that two sales of one quarter ounce of heroin on each occasion would place the seller somewhere between our categories of "large quantities" and "small quantities" for sale. Similarly, in *Thurlkill v. State*, 551 P.2d 541, 546 (Alaska 1976), we noted that sales of $125 worth of amphetamine tablets, the culmina-

---

7. Excluding the invalid convictions in question and the convictions struck by Judge Burke from the presentence report, Davis' prior record of convictions is as follows:

Felony convictions for: second degree burglary, 1949; forgery, 1957; burglary not in a dwelling, 1961; felon in possession of a firearm, 1970. Misdemeanor convictions for: concealed weapon, 1955; petty larceny, 1959; assault and battery, and breach of the peace, 1962. Judge Burke did not take into account prior convictions for possession of marijuana, which at the time of conviction was a felony, 1955; a 1972 driving offense involving fraudulent alteration of a driver's license; and failure to satisfy a warrant, 1972.

8. *Compare McKenzie v. State*, 520 P.2d 791 (Alaska 1974), *with Avery v. State*, 514 P.2d 637, 646–47 (Alaska 1973). *Cf. Burford v. State*, 515 P.2d 382 (Alaska 1973) (uncounseled prior convictions admitted to impeach credibility was harmless error when the state had a strong case and other valid convictions were included in the impeachment).

9. Davis was convicted of five separate counts of sale of heroin and one count of possession under AS 17.10.010. The sentencing statute which applies to AS 17.10.010 is AS 17.10.200; it provides in pertinent part:

Penalties. (a) A person who violates any provision of this chapter except a provision relating to the keeping of records, upon conviction, is punishable by a fine of not more than $5,000 and by imprisonment for not less than two nor more than 10 years. For a second offense, or for a first offense where the offender has previously been convicted of a violation of the laws of the United States or of any other state, territory or district relating to narcotic drugs, the offender is punishable by a fine of not more than $7,500 and by imprisonment for not less than 10 nor more than 20 years. For a third or subsequent offense, or if the offender has previously been convicted two or more times of a violation of the laws of the United States or of any other state, territory or district relating to narcotic drugs, the offender is punishable by a fine of not more than $10,000 and by imprisonment for not less than 20 nor more than 40 years.

As noted previously in this opinion, imposition of consecutive sentences for separate offenses does not violate the constitutional prohibition against double jeopardy.

694

tion of a drug selling career that lasted five months, also fell between the "large" and "small" categories we had adopted in *Waters.*

Davis has been convicted of five offenses of selling heroin for incidents that occurred over a period of approximately three months. The maximum amount sold to the police informant during the controlled "buys" was six "balloons" at a cost of $100 on each of the last two occasions. At Davis' arrest and subsequent search of his house, pursuant to valid arrest and search warrants,[10] three balloons containing heroin, a bottle of white powder and a bottle of capsules which contained a balloon of heroin were discovered. The searching officers also found five bags containing party balloons, two cans of lactose (milk sugar),[11] two envelopes of balloons and a bottle of clear gelatin and pink gelatin capsules.

Although a relatively small quantity of heroin was uncovered during the search of Davis' house, it is clear from the large amounts of "cutting" and distribution materials discovered that Davis was involved in the sale of a substantial amount of heroin on a "retail" basis. Although it cannot be said from the evidence that Davis was a "titan" in the illegal narcotics traffic, neither can it be said that Davis was engaged in the "sale of small quantities of narcotics." Any categorization for the purpose of sentencing of Davis' traffic in heroin, there-

fore, must place him somewhere between a seller of large quantities and a seller of small quantities.

 The record shows that Davis was engaged in the heroin business for profit, not as an addict in need of a source for his habit. In *Thurlkill, supra* at 547, we stated that:

[t]he unauthorized sale for profit of harmful substances to the citizens of this state is conduct which merits a great deal of concern.

Thus we consider Davis' engaging in the sale of heroin for profit to be an aggravating circumstance that merits serious consideration by the sentencing court.[12] Furthermore, Davis' lengthy prior criminal record indicates a past history of anti-social conduct that demonstrates that he is a danger to the safety of the community at large.[13] The fact that, after many periods of incarceration for past criminal conduct, Davis still is unable to control his anti-social behavior leads us to believe that a substantial period of incarceration is necessary for the protection of the public, to deter Davis and others from similar conduct, and to reaffirm societal norms embodying condemnation of unlawful drug sales.[14]

Therefore, considering the aggravating circumstances surrounding Davis' substantial traffic in heroin, we cannot say that the superior court erred in classifying Davis as

10. *Davis v. State*, 525 P.2d 541 (Alaska 1974) (same case).

11. A substance often used to "cut" heroin.

12. *See Meyers v. State*, 488 P.2d 713, 715 (Alaska 1971) (sales for profit as aggravating circumstance).

At his original sentencing, Davis claimed he was not an addict. In a subsequent hearing to have his sentence reduced, Davis then claimed addiction. In a review of that hearing, we held:

As to his claimed drug addiction, Davis' evidence can be considered newly discovered only by concluding that he lied at the time of original sentencing. Like the trial court, we are of the opinion that this did not establish grounds for altering the sentence.

*Davis v. State*, 566 P.2d 640, 643 (Alaska 1977).

13. *See Waters v. State, supra* at 202; *Tarnef v. State*, 492 P.2d 109 (1977).

14. This court has recognized the following goals of criminal sanctions: (1) rehabilitation of the convicted offender into a non-criminal member of society; (2) isolation of the offender from society to prevent criminal conduct during the period of confinement; (3) deterrence of the other members of the community who might have tendencies toward criminal conduct similar to those of the offender; (4) deterrence of the offender himself after release; (5) community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves. *See Perrin v. State*, 543 P.2d 413, 414–15 (Alaska 1975); *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

We agree with the sentencing court that rehabilitation in this case, without some very intensive therapy of some form, is probably an idle hope.

the worst type of drug offender or clearly mistaken [15] in imposing the sentence it did.

Affirmed.

BURKE, J., not participating.

---

**15.** The standard for review of sentences in Alaska is whether the trial judge was clearly mistaken in imposing a particular sentence. *Benefield v. State*, 559 P.2d 91, 97 (Alaska 1977); *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). *See, e. g., Thurlkill v. State*, 551 P.2d 541, 547 (Alaska 1976).