James W. PAGE, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 6208.

Court of Appeals of Alaska.

Jan. 21, 1983.

Mary E. Greene, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

James W. Page, Jr. was indicted for murder in the first degree, AS 11.41.100(a)(1), and robbery in the first degree, AS 11.41.-500. The state charged that Page murdered John Henry McKinney on January 1, 1981. Before a jury, Page admitted stabbing McKinney a number of times, tying him up, and leaving him to die. He explained his actions by alleging that McKinney had subjected Page to an attempted homosexual rape under circumstances making the killing self-defense, or, at the very least, creating sufficient provocation to reduce murder to manslaughter. The jury convicted Page of the lesser included offense of second-degree murder, AS 11.41.-110, and first-degree robbery.

On June 26, 1981, the parties appeared before Judge Blair for sentencing. Page moved for a continuance, arguing that he had just received the presentence report that day. Judge Blair denied the continuance and proceeded with sentencing, stating that if Page had additional materials to present, he could present them within ninety days. Judge Blair apparently relied on his power to alter or reduce the sentence within 120 days of its pronouncement. *See* Alaska R.Crim.P. 35(a). At that time, Judge Blair sentenced Page to the maximum sentence of ninety-nine years for second-degree murder and twenty years for first-degree robbery, to run consecutively. Thereafter, Judge Blair considered addi-

tional materials submitted by Page in the form of testimonials and character references and issued an order confirming the original sentence on October 27, 1981.

Page appeals his conviction and sentence on three points. First, he contends the trial court erred by excluding literature on aberrant sexual activity discovered in the victim's strong box. He argues that the evidence was relevant to show self-defense and provocation. Second, he asserts that the trial court erred in refusing to continue the sentencing hearing because his defense counsel had received the presentence report the morning of the hearing. Third, he contends that consecutive sentences of ninety-nine and twenty years for the crimes of second-degree murder and first-degree robbery are excessive under the circumstances.

We affirm the conviction. The trial court properly excluded the evidence. We conclude that the trial court erred in denying Page a continuance to consider the presentence report but hold that any error was harmless under the circumstances. Finally, we conclude that the record will not support consecutive sentences of ninety-nine and twenty years for this defendant and, therefore, vacate the sentence and remand for entry of a judgment that will provide that the sentences run concurrently.

## EVIDENCE OF VICTIM'S INTEREST IN "ABERRANT SEXUALITY"

After McKinney's murder, the police searched his personal effects for clues about the perpetrator of the crime. During their search of McKinney's strong box, they found a number of books and magazines which Page contends manifest a morbid interest in aberrant sexuality. The books and magazines in question are not part of the record and were not furnished to the trial court. In his offer of proof, Page relied exclusively on the titles of some of the books, *i.e., I Pervert, Little Brother's Big Thing, Sex in the Classroom, The World [sic] Practice of Anal Love, Torrid Women for the Young Boys, Masturbation, A Lust for Incest, The Friendly Couples, Focus on Incest, Illustrated Encyclopedia of Obscenity and Pornog-*

raphy, and copies of *Penthouse* and *Playboy* magazines.

Page relies on Alaska Rule of Evidence 404(a). It provides in relevant part:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

. . . .

(2) Character of Victim. Evidence of a relevant trait of character of a victim of crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor, subject to the following procedure:

(i) When a party seeks to admit the evidence for any purpose, he must apply for an order of the court at any time before or during the trial or preliminary hearing.

(ii) The court shall conduct a hearing outside the presence of the jury in order to determine whether the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim. The hearing may be conducted *in camera* where there is a danger of unwarranted invasion of the privacy of the victim.

(iii) The court shall order what evidence may be introduced and the nature of the questions which shall be permitted.

(iv) In prosecutions for the crime of sexual assault in any degree and attempt to commit sexual assault in any degree, evidence of the victim's conduct occurring more than one year before the date of the offense charged is presumed to be inadmissible under this rule, in the absence of a persuasive showing to the contrary.

Page asserts that someone who has an interest in "aberrant sexual activity" is more likely to commit homosexual rape than someone who does not. He also contends that evidence of McKinney's interest in sexually oriented books and magazines supports an inference that he had a morbid interest in sexuality which in turn would support a further inference that he was more likely to commit homosexual rape than someone who lacked such morbid interests.

Page relies on what he contends is a substantial liberalization in the admissibility of evidence following the adoption of the Rules of Evidence and particularly Alaska Rule of Evidence 401, which provides: "Relevant evidence means evidence having any tendency to make the existance of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus he concludes, evidence of McKinney's interest in "aberrant sexuality" meets the test of having "any tendency" to make the existence of a homosexual rape more probable than it would have been without the evidence.

■ After hearing argument, the trial judge concluded that Page failed to establish that one who read the books having the titles in question would be more apt to commit a homosexual rape than one who did not. Nevertheless, the judge qualified his ruling:

Mr. Canarsky, all you need is one witness of—that's qualifies [sic] in this court to give an opinion who will say that the fact that Mr. McKinney had these books in his possession apparently, in a locked file there, increases the probability that he was in fact—would have engaged in a homosexual act with Mr. Page. That's all you need and you can put it all in. Just increases the probability, it's the only standard I'm giving you. Doesn't even have to be more probable than not. Get—if you've got an expert that says that, any psychologist, psychiatrist who comes in and gives that opinion, you're home free. If you haven't got that forget it.

Page has not found a single case supporting his position. He relies exclusively on quotations from C. Wright & K. Graham, *Federal Practice and Procedure: Evidence*

§§ 5161–5162, at 6–26 (1978). The authors' treatment of relevance supports the position of the trial court. *See id.* § 5165, at 48–65. The authors point out that one cannot rationally draw an inference from one specific fact to another without necessarily relying upon the use of a proposition of generalized knowledge to tie the two facts together. The alleged proposition of general knowledge which Page assumes is that people who read pornography are more apt to engage in homosexual activity, particularly forced homosexual activity, than those who do not read such material. Normally propositions of generalized knowledge are subject to judicial notice. Nevertheless, the authors caution:

> In most cases the court will take judicial notice of the necessary proposition of general knowledge; however, if the fact is not one that is judicially noticeable, the proponent of the evidence must prove it in order to make the evidence relevant. In taking judicial notice of such propositions of general knowledge, the court is not bound by the requirements in Rule 201 that the fact be indisputable and that notice be given, because such propositions are not "adjudicative facts." And, of course, the court's taking of judicial notice of the generalized fact does not bar the opponent from rebutting the force of the evidence by disproving the proposition of generalized knowledge that makes it relevant. But the proposition must either be proved or it must be one that the court can reasonably assume without proof.

*Id.* § 5165, at 57 (footnotes omitted).

■ The trial court did not err in declining to find the nexus between reading pornography and engaging in homosexual rape a matter of common knowledge. If a nexus exists, it would have to be established by expert evidence. We therefore affirm the judgment of conviction.[1]

---

1. *Keith v. State,* 612 P.2d 977, 983–84 (Alaska 1980), is not inconsistent with this view. In *Keith,* a murder prosecution the court held that the victim's journal supported an inference that he was a violent person. This in turn supported the defendant's theory that the victim was the aggressor and the defendant killed him in self-defense. The nexus between violence and aggression may be a matter of common knowledge. The nexus between pornographic literature and homosexual rape is not.

## DENIAL OF CONTINUANCE

The trial court denied defendant's motion for a continuance to consider a presentence report received the day of the sentencing. The record reflects that the state stipulated to a continuance. The trial court recognized the importance of the presentence report in formulating an appropriate sentence, and further recognized defendant's need to study that report in preparing for the sentencing. Nevertheless, the trial court concluded the defendant would not be harmed if sentence was immediately imposed, but ninety days additional time was allowed to study the report and make any objections to it or offer any conflicting or supplementary evidence which defendant wished to offer. We disagree.

■ While the trial court has the power to review a sentence and reduce it within 120 days of its imposition under Alaska Rule of Criminal Procedure 35(a), a defendant is in a substantially different position offering evidence and making arguments before a sentence is imposed than he is after it is imposed. Generally, the trial court should not proceed with imposition of sentence where the defendant has had insufficient time to study the presentence report, at least where the delay is not attributable to bad faith on the part of defendant or his counsel. Here, there is no suggestion that defendant was dilatory in preparation. Consequently, the trial court erred in denying the motion for continuance. However, defendant does not point to anything in the presentence report that was untrue, or suggest any additional material that should have been, but was not, considered by the trial court in reaching an appropriate sentence. Consequently, under the circumstances, we conclude, as a matter of fact, no prejudice was suffered.

## SENTENCE APPEAL

At the time of sentencing Page was twenty-two years of age. His criminal ca-

reer began in 1977 with his conviction for a series of burglary-related offenses. From 1977 until 1982 he committed between five and thirteen separate felonies and spent a substantial period of time incarcerated or on probation. At the time of McKinney's murder, Page was a fugitive from Massachusetts where he had been assigned to a live-in drug rehabilitation program which he had left without permission.

■ The trial court gave the maximum sentences for second-degree murder and first-degree robbery and made those sentences consecutive. A maximum sentence is inappropriate for anyone who is not a "worst offender." *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975). The court in *Wortham* stated:

> Some of the factors which this court has looked to in order to support such a characterization—and the imposition of a maximum term—have been prior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which has been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public.

*Id.* at 1120 (citations omitted).

Judge Blair cited *Donlun v. State,* 527 P.2d 472 (Alaska 1974), as justification for relying primarily upon prior convictions in evaluating Page as a worst offender. In *Donlun,* the court held, consistent with *Wortham,* that a defendant who was (1) a first offender, (2) only twenty-one years of age at the time of the offense, (3) voluntarily conceded his guilt, and (4) was making excellent progress in an alcoholic treatment program, could not be characterized as a worst offender. *Id.* at 475.

Page's youth and the fact that his prior crimes did not involve injury to persons militate against characterizing him as a worst offender in a murder case. On the other hand, Page's actions in stabbing his victim a number of times and leaving him to bleed to death, his total lack of remorse, his extensive criminal record, and his failure to benefit from past probationary supervision, exacerbated by his failure to address his drug problems in the therapeutic community to which he was assigned, on balance justify the trial court's conclusion that Page was a worst offender. The court could well conclude that Page could be a substantial danger to the community within the foreseeable future.

We recognize that the ninety-nine year sentence imposed upon Page for second-degree murder exceeds any sentence previously approved by the Supreme Court or this court for that crime.[2] We also recognize

---

**2.** *Evans v. State,* 645 P.2d 155 (Alaska 1982) (thirty years); *Nielsen v. State,* 623 P.2d 304 (Alaska 1981) (forty-five years for second-degree murder, plus a consecutive ten-year sentence for assault with a dangerous weapon for a total of fifty-five years; defendant had a history of convictions for violent crimes, including one for which he had received a twenty-year sentence); *LaLonde v. State,* 614 P.2d 808 (Alaska 1980) (twenty years); *Gipson v. State,* 609 P.2d 1038 (Alaska 1980) (twenty years); *Bangs v. State,* 608 P.2d 1 (Alaska 1980) (fifteen years); *Ahwinona v. State,* 598 P.2d 73 (Alaska 1979) (life sentence; defendant stabbed his victim, leaving her to die after robbing her; defendant had a history as a juvenile of violent crimes, although no adult felony convictions, and had received an adverse psychiatric evaluation indicating that he had a potential for substantial future violence); *Mills v. State,* 592 P.2d 1247 (Alaska 1979) (defendant convicted of two counts of second-degree murder received two concurrent twenty-five year sentences); *Johnson v. State,* 511 P.2d 118 (Alaska 1973) (three concurrent life sentences, defendant killed three victims and was found guilty of three counts of second-degree murder; no apparent motive for the crime, which may have been caused in part by mental illness; defendant to be paroled at the discretion of the parole board); *Asitonia v. State,* 508 P.2d 1023 (Alaska 1973) (twenty years); *Condon v. State,* 498 P.2d 276 (Alaska 1972) (twenty years); *Faulkenberry v. State,* 649 P.2d 951 (Alaska App.1982) (sixty years neither excessive nor too lenient, nineteen-year old first adult offense, with substantial juvenile record for starting fires and drug and alcohol abuse; defendant diagnosed as a pyromaniac who set fire to his victim's apartment resulting in her death; defendant found to be a worst offender, highly likely to commit further crimes because any mental and emotional illness was resistive to treatment); *Davidson v. State,* 642 P.2d 1383 (Alaska App.1982) (twenty-five years); *Nelson v. State,* 619 P.2d 480 (Alaska App.1980) (life sentence; defendant intentionally strangled his victim for no apparent reason).

that the life sentences approved for *Ahwinona v. State,* 598 P.2d 73 (Alaska 1979), *Johnson v. State,* 511 P.2d 118 (Alaska 1973), and *Nelson v. State,* 619 P.2d 480 (Alaska App.1980), under our former law made those defendants eligible for parole at the end of fifteen years and that Page will not be eligible for parole until he has served thirty-three years' imprisonment.

A review of the sentences for second-degree murder considered by the supreme court and this court since 1970 indicate that the typical sentence is twenty to twenty-five years. It is possible that the reported cases overstate sentences, since someone receiving less than twenty years may not be strongly motivated to appeal. Twenty years is therefore a proper benchmark to measure sentences for this crime. Any sentence substantially exceeding that amount would appear at least provisionally suspect. It would appear appropriate, therefore, in light of AS 12.55.125(b)[3] and experience in sentencing second-degree murderers, both before and after enacting the revised code, that one convicted of that offense should receive a sentence of from twenty to thirty years. Naturally, mitigating circumstances could reduce the sentence down to the five-year minimum and aggravating circumstances could enhance it up to the ninety-nine year maximum.

Potential sentence disparity is at its greatest where a court imposing sentence has the greatest discretion. Here the range of sentences is from five to ninety-nine years. A benchmark, like the one under consideration, helps to focus the attention of the trial court and the parties on individual cases and ensure that typical cases would receive a typical sentence and that those defendants receiving atypical sentences would be sentenced on the basis of objective aggravating factors, not factors idiosyncratic to a specific judge. Obviously, a benchmark sentence can only be a guide, not a rule, since the legislature clearly could have made presumptive sentencing applica-

ble to second-degree murderers and elected not to do so.

The appellate courts of Alaska have only approved three sentences of life imprisonment for second-degree murder since 1970 and, as we have seen, such a sentence is actually more lenient than the ninety-nine year sentence imposed here. In *Ahwinona, Johnson,* and *Nelson,* the crimes were virtually motiveless, the defendants suffered from mental illness which was not sufficient to exonerate them, but which provided a substantial concern about future violent activities. In *Nielsen v. State,* 623 P.2d 304 (Alaska 1981), and *Faulkenberry v. State,* 649 P.2d 951 (Alaska App.1982), where the court also imposed a greater term than the thirty-year benchmark, other factors were held to be properly considered in justifying the sentence. In *Nielsen,* the defendant had a history of convictions for violent felonies and had previously received a twenty-year sentence of imprisonment. The court properly characterized Nielsen as a worst offender and sentenced him to forty-five years. In *Faulkenberry,* the defendant, a dangerous pyromaniac, had a guarded prognosis for rehabilitation. Faulkenberry received a sixty-year term.

Page is a worst offender. He committed a particularly brutal assault, then left his bound and injured victim to die. He has a severe drug and alcohol dependency that he has been unable to overcome despite considerable involvement with rehabilitative agencies. Finally, he has committed a substantial number of felonies over the past five years and therefore qualifies as a dangerous and habitual offender. *Viveros v. State,* 633 P.2d 289, 291 (Alaska App.1981). A ninety-nine year sentence while severe was not clearly mistaken. *See Faulkenberry v. State,* 649 P.2d at 956–57. However, nothing in the record supports a finding that Page will continue to be a danger after the expiration of ninety-nine years. He may not, therefore, receive a consecutive sentence. *Lacquement v.*

---

**3.** AS 12.55.125(b) provides:

A defendant convicted of murder in the second degree or kidnapping shall be sentenced to a definite term of imprisonment of at least five years but not more than 99 years.

*State,* 644 P.2d 856, 861–62 (Alaska App. 1982); *see Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977).

The judgment of the superior court is AFFIRMED. The sentence is VACATED and the case REMANDED for resentencing to concurrent terms.