**Hyo J. MOON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2039.**

Court of Appeals of Alaska.

Jan. 5, 1990.

Susan Orlansky, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

In this appeal we are asked to determine whether a joint military and civilian investigation of local drug dealers violated the Posse Comitatus Act, 18 U.S.C. § 1385 (1988), and if so, whether the exclusionary rule should apply to all evidence uncovered by the investigation. We conclude that the Act was not violated.

In early 1986, the Anchorage Police Department (APD) became concerned about drug dealing at the Palace Hotel located on 4th Avenue in Anchorage, Alaska. The

city filed a civil suit to close down the Palace Hotel as a public nuisance. *Anchorage v. Yon–Hong Lee*, 3AN–86–1424CIV. The police also began a criminal investigation of the Palace Hotel. A search was conducted of the Palace Hotel in February, per a search warrant. The scope of the search involved drugs and stolen property. Noting that drug dealing at the Palace Hotel seemed to target enlisted military personnel, on February 20, 1986, Lt. Thomas Walker of the Anchorage Police Department Crisis Intervention Response Team (CIRT) approached the United States Army Criminal Investigation Division (CID) at Fort Richardson, seeking assistance. He advised military authorities that cocaine and marijuana were being regularly sold to soldiers at Fort Richardson by dealers operating out of the Palace Hotel.

On February 21, 1986, special agents with the United States Army Drug Suppression Team (DST), attempted to verify Walker's information. According to the military reports of the investigation, "DST members, presenting a military appearance, walked by the area of the Palace Hotel and were solicited several times to purchase marijuana and cocaine." The report states that other soldiers were seen buying drugs in the vicinity of the Palace Hotel and that cars with Fort Richardson registration stickers were also seen in the area. The activities observed by DST personnel were also consistent with information independently developed by the military authorities.

Having satisfied themselves that people associated with the Palace Hotel were engaging in drug trafficking with military personnel, the local military authorities sought and obtained permission from the United States Army Criminal Investigation Division Command for the Sixth Region in San Francisco, and the United States Army Criminal Investigation Command in Falls Church, Virginia, to undertake a joint criminal investigation with the Anchorage Police Department.

In early March 1986, Anthony Henry, a special agent in the United States Army Criminal Investigation Command was assigned to travel from his base in Colorado to Anchorage to assist with the investigation of the Palace Hotel. Agent Henry was briefed by both military and civilian investigators. He quickly became the center of the investigation which led to the charges in this case. Working undercover, Agent Henry posed as an enlisted soldier interested in buying drugs expressly for resale on Fort Richardson and Fort Wainwright which is located outside of Fairbanks, Alaska. Throughout the Palace Hotel investigations, Agent Henry was primarily assisted by three other law enforcement officers, Investigator Brady (DST), Investigator Elskamp (DST), and Officer Decker (APD). From March 13 until roughly May 13, Agent Henry made numerous purchases of cocaine at the Palace Hotel. The evidence he procured and the testimony he gave, led to the conviction of Hyo J. Moon. Moon argues that Agent Henry's participation in the investigation constituted a violation of the Posse Comitatus Act, 18 U.S.C. § 1385 (1988), which provides as follows:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, wilfully uses any part of the Army or the Air Force as a *posse comitatus* or otherwise to execute the law shall be fined not more than $10,000 or imprisoned not more than two years or both.

The Posse Comitatus Act was passed shortly after the Civil War in order to deal with presumed abuses of military authority in the southern states. *See, e.g., Harker v. State*, 663 P.2d 932 (Alaska 1983); *Jackson v. State*, 572 P.2d 87 (Alaska 1977); *Anchorage v. King*, 754 P.2d 283 (Alaska App. 1988). In 1981, motivated by concern over "[t]he rising tide of drugs being smuggled into the United States," Congress enacted a new set of federal statutes designed to clarify and to liberalize the restrictions of the Posse Comitatus Act. H.R.REP. NO. 71, 97th Cong., 1st Sess. 3, pt. 2, *reprinted in* 1981 U.S.CODE CONG. & ADMIN. NEWS 1785; *see* 10 U.S.C. §§ 371–78 (1988). Moon argues that the legislative

history generated by these amendments reflects that Congress intended the statutes to serve two equally important goals: "to maximize the degree of cooperation between the military and civilian law enforcement" to stem the influx of illegal drugs into this country while, "[a]t the same time ... recogniz[ing] the need to maintain the traditional balance of authority between civilians and the military." H.R.REP. NO. 71, 97th Cong., 1st Sess. 3, pt. 2, *reprinted in* 1981 U.S.CODE CONG. & ADMIN. NEWS 1785, 1785.

Moon argues that these statutes and implementing regulations establish that the military may provide information to civilian law enforcement officials, loan equipment, and under certain circumstances, train civilians in the use of that equipment. However, military personnel are specifically prohibited from participating directly in civilian law enforcement in such activities as interdicting a vessel or aircraft or conducting a search, seizure, arrest, or other similar activity. 10 U.S.C. § 375 (1988). Moon relies primarily upon certain regulations adopted by the Department of Defense (DoD) to implement this Act. *See, e.g.*, 32 C.F.R. § 213 (1988). He relies particularly on 32 C.F.R. § 213.10(a)(3) (1988), which provides:

> *Restrictions on direct assistance.* Except as otherwise provided in this enclosure, the prohibition on use of military personnel "as a posse comitatus or otherwise to execute the laws" prohibits the following forms of direct assistance:
>
> ....
>
> (iv) Use of military personnel for surveillance or pursuit of individuals, or as informants, undercover agents, investigators, or interrogators.[1]

Moon concedes that "[it is] otherwise provided in this enclosure" that military actions "taken for the primary purpose of furthering a military or foreign affairs function" are authorized as an exception to the general rule, *see* 32 C.F.R. § 213.10(a)(2)(i) (1988), but argues that this exception must be narrowly construed. He quotes as follows from the regulation:

> This provision must be used with caution and does not include actions taken for the primary purpose of aiding civilian law enforcement officials or otherwise serving as a subterfuge to avoid the restrictions of the Posse Comitatus Act.

32 C.F.R. § 213.10(a)(2)(i) (1988).

The state argues that the government had a sufficient military purpose in this case to warrant Agent Henry's undercover investigation. It relies on a criminal investigation's policy memorandum issued by the Inspector General of the Department of Defense regarding criminal drug investigative activities. The policy memorandum sets out procedures to be followed by military authorities in obtaining permission to conduct undercover investigations in conjunction with civilian authorities off base. The memorandum notes that drug offenses committed by DoD personnel and the introduction of drugs onto military installations, adversely affects the efficiency and effectiveness of DoD programs. The memorandum specifically addresses investigative action involving persons not subject to the Uniform Code of Military Justice (UCMJ) and provides as follows:

> The military criminal investigative organizations may undertake investigative actions with respect to a person not subject to the UCMJ:
>
> (1) If there are reasonable grounds to believe that such a person has committed a drug offense in conjunction with a member of the Armed Forces and the investigative actions are undertaken to obtain evidence concerning all illegal

---

1. Moon cites the House Judiciary Committee report as follows:

   The Committee adopted the view of the Department of Justice that the weight of authority on the Posse Comitatus Act "prohibits the use of military personnel as informants, undercover agents, or non-custodial interrogators in a civilian criminal investigation that does not involve potential military defendants

   or is not intended to lead to any official action by the armed forces." H.R.REP. NO. 71, 97th Cong., 1st Sess. 3, pt. 2 at 8 n. 1, *reprinted in* 1981 U.S.CODE CONG. & ADMIN. NEWS 1785, 1791 n. 1, quoting letter from Mary C. Lawton, Office of Legal Counsel, Department of Justice to Deanne Siemer, General Counsel, Department of Defense, March 29, 1978, at 2.

drug transactions between such person and any member of the Armed Forces, or

(2) If there are reasonable grounds to believe that such person is the immediate source of the introduction of illegal drugs onto the military installation and the investigative actions are undertaken to obtain evidence concerning all persons engaged in drug trafficking on the installation.

The memorandum specifically provides that "DoD personnel assigned to or under the control of military criminal investigative organizations may be utilized as informants or undercover agents for the purposes" of carrying out such investigations. The memorandum then sets out procedures for obtaining approval for such investigations, which were followed in this case.

Judge White found that this was a close case. We agree. The difficult question facing this court is how substantial a nexus must exist between drug sales off base by civilians to military personnel and the military base at which the purchasers are stationed, before the military may directly participate in an undercover investigation of these civilians and their off base activities. We note that only civilians were prosecuted as a result of this investigation and we have not been informed of any specific action taken by military authorities on base as a result of the investigation.

Unlike the trial court, we find it necessary to determine whether the Posse Comitatus Act was violated in this case. *Harker*, 663 P.2d at 935–37. We are satisfied that no violation occurred. It seems to us that the army had a valid military purpose in preventing illicit drug transactions involving active duty personnel even if the

transaction took place off base. The investigation was not begun until the military was satisfied that drug dealers at the Palace Hotel had targeted military personnel as a market. It was also reasonable to infer that a substantial quantity of illicit drugs was finding its way onto the base. *Id.* at 936.

■ We are also satisfied that no exclusionary rule should apply even if the Act were violated. A number of reasons lead us to this conclusion. First, given the Inspector General's memorandum, this is not a case in which the military authorities acted precipitously or in clear violation of the applicable statute. It appears that the local military authorities obtained advance permission in accordance with the Inspector General's memorandum before undertaking this investigation. Second, there is no history of violations of the Act in Alaska. In fact, no Alaskan case has ever found a violation of the Act. *See, e.g., Harker*, 663 P.2d 932; *Jackson*, 572 P.2d 87, and *King*, 754 P.2d 283. Further, criminal penalties would apply in the case of an outrageous violation of the Act. *See* 18 U.S.C. § 1385 (1988).[2]

We therefore conclude that the trial court did not err in denying Moon's motion to suppress. The judgment of the superior court is AFFIRMED.

---

2. We recognize that no one has ever been prosecuted for violating the Act. *Jackson*, 572 P.2d at 90 n. 9.