800 P.2d 928 (1990)
Donald J. McPHERSON, Appellant,
v.
STATE of Alaska, Appellee.
No. A-2951.
Court of Appeals of Alaska.
November 9, 1990.
*929 Rex Lamont Butler, Anchorage, for appellant.
John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.
Before BRYNER, C.J., COATS, Judge, and ANDREWS, District Court Judge.[*]

OPINION
COATS, Judge.
Donald J. McPherson was convicted by a jury of one count of misconduct involving a controlled substance in the first degree (sale of cocaine to a minor), an unclassified felony and four counts of misconduct involving a controlled substance in the third degree (sale of marijuana to a minor). McPherson had two prior felony convictions and was therefore subject to sentencing as a third felony offender. Superior Court Judge Karl S. Johnstone sentenced McPherson to 20 years of imprisonment on the conviction for sale of cocaine to a minor. He imposed concurrent six-year sentences on the convictions for sale of marijuana to minors. McPherson appeals his conviction and sentence. We affirm McPherson's conviction but reverse his sentence.
McPherson was indicted, along with several co-defendants, after a joint investigation by military investigators and the Anchorage Police Department, for drug dealing at Jack's Arcade. The military had received reports that soldiers had purchased illegal drugs there, and the Anchorage Police Department was already conducting its own investigation of possible drug sales to minors at the arcade. McPherson claims that the military's participation in this investigation constituted a violation of the Posse Comitatus Act, 18 U.S.C. § 1385 (1988), and therefore requires reversal of his conviction. We disagree. First, we are in agreement with the trial judge that no violation of the Act occurred. We believe that there was a valid military purpose in investigating drug transactions at Jack's Arcade when there was evidence that military personnel had participated in transactions there. We also note that the military investigator's role was limited, and that military authorities sought and obtained prior authorization from their superiors before participating in the investigation. See Moon v. State, 785 P.2d 45, 48 (Alaska App. 1990). Moreover, as we indicated in Moon, we believe that it would be inappropriate to apply the exclusionary rule in this case even if there had been a violation of the Posse Comitatus Act. Id.
McPherson also complains that evidence of other uncharged crimes and bad acts was improperly admitted against him. He contends that the state failed to make prior applications to the court before eliciting testimony about juveniles using illegal drugs in and around Jack's Arcade, other instances of McPherson selling drugs to juveniles, and McPherson using cocaine at the arcade. However, there was no objection to this testimony and McPherson has not argued that it was plain error for Judge Johnstone to have allowed its admission.
McPherson did not object after the state presented testimony by a military investigator that he had never seen McPherson refuse to sell narcotics to a juvenile who was willing to buy. McPherson immediately moved for a mistrial. Judge Johnstone agreed that the testimony was improper, but he did not believe that a mistrial was warranted. However, he warned the state that he would seriously consider granting such a motion if the state introduced any other objectionable matter without making a prior application to the court, and he directed defense counsel to prepare an appropriate cautionary jury instruction. The jury was apparently later instructed that

*930 [any] testimony that the defendant may have sold marijuana to others or that other people purchased marijuana at Jack's Arcade in the defendant's presence ... is not to be considered by you for any purpose. It is not relevant to the issue of whether the defendant sold marijuana or cocaine to the confidential informant as charged in the indictment.
We recognize that the Alaska Rules of Evidence greatly restrict the admission of prior bad acts against a defendant. See Alaska Evidence Rule 404(b); Lerchenstein v. State, 697 P.2d 312, 315-16 (Alaska App. 1985). However, the question of whether to grant a mistrial as a result of improper evidence is committed to the sound discretion of the trial judge. A cautionary jury instruction is often an appropriate remedy. As we stated in Brown v. State, 693 P.2d 324, 327 (Alaska App. 1984) (citations omitted):
The trial court is vested with broad discretion to determine whether a mistrial should be granted, because that court has the opportunity to hear the tainted evidence as it is presented and to observe the impact it has on the jury. When the court withdraws improper evidence from the jury's consideration and cautions the jury to disregard it, the cautionary instruction is "presumed to cure any error which may have been committed... ."
See also Peschel v. State, 770 P.2d 1144, 1150 n. 3 (Alaska App. 1989). Thus, we find no error in Judge Johnstone's refusal to grant a mistrial.
McPherson next argues that his sentence of twenty years imprisonment for sale of cocaine to a minor was excessive. The offense in question involved the sale of approximately two grams of cocaine to a police informant who was under the age of nineteen and was at least three years younger than the defendant. McPherson was twenty-five years old at the time of the offense; the informant was one month less than the age of nineteen at the time of the sale. The undercover informant told McPherson that he was under nineteen, was in the military and buying drugs for the purpose of celebrating his nineteenth birthday.
McPherson had been convicted of two prior felonies. McPherson's first conviction was in 1986 for burglary in the first degree and theft in the second degree. He received a suspended imposition of sentence on this offense. In 1987, he was convicted of assault in the third degree. He was given a two-year presumptive sentence for this offense.
Judge Johnstone's findings in sentencing McPherson on the class B felonies for sale of marijuana to minors are relevant for analyzing the sentence for the sale of cocaine to a minor. As a third felony offender, McPherson faced a presumptive sentence of six years on those felonies. It is uncontested that McPherson's offenses were aggravated because, at the time of the offense, McPherson was on probation or parole on one of his former felony charges. AS 12.55.155(c)(20). However, Judge Johnstone found that the marijuana offenses were mitigated on two grounds. First, Judge Johnstone found that each of the four offenses involved the sale of a small quantity of the controlled substance. AS 12.55.155(d)(14). He also concluded that "the conduct constituting the offense was among the least serious conduct included in the definition of the offense." AS 12.55.155(d)(9). In particular, Judge Johnstone emphasized the fact that McPherson made the sales to undercover agents who were very close to the age of nineteen. However, in sentencing McPherson, Judge Johnstone found that during the time McPherson worked at Jack's Arcade, he made numerous sales of marijuana each day. Many of these sales were to young people, including some who were as young as fifteen years of age. Judge Johnstone therefore concluded that although McPherson's offenses involving sale of marijuana to minors were mitigated to some extent, these offenses were also aggravated by the fact that McPherson was on probation and that he participated in numerous sales. Judge Johnstone imposed the presumptive six-year sentence on the convictions for sale of marijuana to minors.
*931 Judge Johnstone did not make any findings concerning any aggravating or mitigating factors which might apply to the conviction for sale of cocaine to a minor. Judge Johnstone pointed out that the offense of misconduct involving a controlled substance in the first degree, which includes the offense of sale of cocaine to a minor, is an unclassified felony with a maximum sentence of ninety-nine years of imprisonment and a minimum sentence of five years. AS 12.55.125(b). Presumptive sentencing and aggravating and mitigating factors do not directly apply to this offense. However, it is clear from Judge Johnstone's findings that he found that McPherson's offense of sale of cocaine to a minor was mitigated in certain respects. The sale of cocaine to a minor "involved small quantities of a controlled substance." AS 12.55.155(d)(14). The sale involved two grams of cocaine. Judge Johnstone did not find that McPherson had participated in a pattern of cocaine sales similar to the finding he made on the sale of marijuana to minors. It also seems clear that Judge Johnstone concluded that McPherson's "conduct constituting the offense was among the least serious conduct included in the definition of the offense." AS 12.55.155(d)(9). McPherson sold the cocaine to an undercover agent who appeared relatively mature and who was within a month of his nineteenth birthday.
In sentencing McPherson, Judge Johnstone pointed out that the legislature classified the offense of sale of cocaine to a minor in the same category as second-degree murder. AS 12.55.125(b). He pointed out that this court has articulated that the typical sentence for a second degree murder falls within certain benchmarks. See Page v. State, 657 P.2d 850 (Alaska App. 1983) (establishing a benchmark for a typical second degree murder of between twenty to thirty years). He stated that he believed that a benchmark sentence of between twenty to twenty-five years was appropriate for the offense of sale of cocaine to a minor. We certainly agree with Judge Johnstone that the legislature has established severe penalties for the offense of sale of cocaine to a minor and that we must give deference to the legislature's authority to establish the appropriate punishment for a crime. See Nell v. State, 642 P.2d 1361 (Alaska App. 1982). We cannot help but note that had McPherson been convicted of a class A felony, a lesser offense than the unclassified felony offense for which he was actually convicted, he would have faced a presumptive sentence of fifteen years of imprisonment as a third felony offender. AS 12.55.125.
However, we find that the approach which the Supreme Court of Alaska took in Pears v. State, 698 P.2d 1198 (Alaska 1985) supports the imposition of a sentence of less than twenty years. In Pears the defendant was convicted of two counts of second degree murder and one count of assault. Pears was driving while intoxicated, after receiving a warning from a police officer not to drive, when he sped through two red lights and collided with another vehicle, killing two of its occupants and injuring another. The trial judge sentenced Pears to a composite sentence of twenty years of imprisonment. This court affirmed Pears' sentence, finding that his sentence was comparable to other sentences for second-degree murder. Pears v. State, 672 P.2d 903, 912 (Alaska App. 1983). The majority of the supreme court compared Pears' sentence to other manslaughter sentences. The supreme court concluded that Pears' conduct was "generally similar to that of drunken drivers who had recklessly caused others to die." Pears, 698 P.2d at 1202. The supreme court also pointed out that, in enacting the revised criminal code, the legislature did not express any intent to increase the penalty for reckless vehicular homicide. Id. at 1202-03. In McPherson's case, the legislature did indicate an intent to impose severe penalties for sale of drugs to minors. However, we believe that it is appropriate to look at sentences in other cases involving the sale of drugs to determine whether McPherson's sentence is excessive. In reviewing the reported cases, we find that few sentences for drug-related offenses exceed *932 ten years.[1] In general, none of the prior decisions seem substantially similar to McPherson's case. However, it is fair to say that cases in which appellate courts have approved sentences of more than ten years were cases which involved truly exceptional offenses and offenders. We conclude that a sentence in excess of fifteen years of imprisonment, including any suspended time, is clearly mistaken. A sentence of fifteen years of imprisonment is equivalent to the presumptive sentence for a third felony offender convicted of a class A felony. We believe that this sentence gives due deference to the legislature's classification of sale of cocaine to minors as a particularly serious offense. We believe that it also gives due deference to McPherson's prior felony record and the fact that he was on probation or parole at the time of this offense and was engaged in a pattern of drug sales to minors. However we do not believe that a sentence in excess of fifteen years can be justified in light of McPherson's age, the small quantity of cocaine which he sold, and the age of the undercover agent to whom he sold. We also do not believe that a sentence in excess of fifteen years can be justified in light of prior sentences which other offenders have received for similar offenses. We accordingly find that the sentence which Judge Johnstone imposed was clearly mistaken. We remand to the trial acourt with directions to impose a sentence of not greater than fifteen years of imprisonment, including suspended time.
REVERSED and REMANDED.
BRYNER, C.J., concurring and dissenting.
BRYNER, Chief Judge, concurring and dissenting.
I join in the court's decision to affirm McPherson's conviction but not in its conclusion that McPherson's sentence is excessive. I agree that the sentence must be vacated and the case remanded for resentencing. However, I reach this conclusion for slightly different reasons than the court.
In imposing McPherson's sentence, Judge Johnstone began by creating a "benchmark" term of twenty to twenty-five years for the offense of misconduct involving *933 a controlled substance in the first degree. The judge then proceeded to determine McPherson's sentence by reference to this benchmark:
This case is a case where the sentence ranges on the cocaine case from five to ninety-nine years. In murder cases, we have benchmarks for typical offenses, typical murders. I don't know the benchmark in this type of a case, so I'm going to establish a benchmark. I think because of the seriousness of the offense, because of the offense in general, the  not your conduct necessarily, but the offense in general, I think that the way the legislature and the community views this type of offense and the disastrous effects it has on our society and our youth, I think a benchmark of between twenty and twenty-five years is an appropriate benchmark for the offense of misconduct involving a controlled substance in the first degree or a sale to juveniles is present.
In your case, I think the conduct is mitigated somewhat, but the offender is aggravated somewhat. I think overall, looking at the offense that you've been convicted of it's a typical offense. It's not aggravated so it needs enhancement of the benchmark, nor is it mitigated that it needs reductions in the benchmark. Because of the conduct, I tend to lean towards the bottom end of the benchmark.
In my view, this approach was fundamentally flawed and requires resentencing.
A basic precept of sentencing is that, in each case, the defendant's sentence must be based upon an individualized consideration of the offender and the offense. To lend structure and uniformity to this process, we have occasionally established benchmark sentences for particular types of crimes. See, e.g., Page v. State, 657 P.2d 850 (Alaska App. 1983) (establishing benchmark for second-degree murder); State v. Andrews, 707 P.2d 900 (Alaska App. 1985), aff'd, 723 P.2d 85 (Alaska 1986) (adopting benchmark for sexual assault/sexual abuse cases); State v. Jackson, 776 P.2d 320 (Alaska App. 1989) (adopting benchmarks for first offense class B felonies). These benchmarks, however, have all been predicated upon our review of past sentencing decisions dealing with similarly situated offenders. In establishing benchmarks, we have attempted to synthesize historical sentencing practices for specific types of offenses in order to provide realistic, experientially based sentencing norms for guidance in future similar cases. Notably, we have never attempted to create sentencing benchmarks based on our abstract notions of what a typical sentence for a given offense ought to be.
In the present case, however, that is precisely what the superior court did in establishing a "benchmark" for McPherson's offense. The exact basis for the sentencing court's selection of twenty to twenty-five years as the benchmark in the present case is not entirely certain. As the majority opinion indicates, however, there is certainly no case law to support the conclusion that a twenty to twenty-five year term is a typical sentence for a typical offense of the type committed by McPherson. Nor can it be assumed that sentencing benchmarks established for other unclassified felonies would be applicable here.
For example, second-degree murder is an unclassified felony that is subject to the same range of penalties as misconduct involving a controlled substance in the first degree. In Page v. State, 657 P.2d at 855, we established a benchmark sentencing range of twenty to thirty years for typical second-degree murder cases. At first blush, it might seem tempting to apply the Page benchmark here. Yet in Pears v. State, 698 P.2d 1198 (Alaska 1985), the supreme court expressly refused to apply the Page benchmark to second-degree murder cases involving incidents of drunken driving. In the Pears court's view the differences in conduct between traditional second-degree murder cases and cases involving drunken driving homicides were sufficient to preclude application of the same benchmark in both types of cases. The court in Pears found that cases involving offenders convicted of drunken driving manslaughter afforded a more suitable point of reference for sentencing purposes.
*934 Similarly, in cases of kidnapping, another unclassified felony subject to a sentencing range of five to ninety-nine years, this court has refrained from applying the Page benchmark; to the extent that we have considered any benchmark, we have suggested that it would be substantially lower than the twenty to thirty-year range found applicable in traditional second-degree murder cases. See e.g., Garrison v. State, 762 P.2d 465, 469-74 (Alaska App. 1988) (Singleton, J., concurring).
From the sentencing remarks in this case, it appears that Judge Johnstone's benchmark simply reflected his personal impression of what the norm for McPherson's offense should be. The problem with this approach is that it is essentially arbitrary. It thereby undermines the principle of individualized sentencing and subverts the basic goal of uniformity. When cut loose from the solid moorings of prior case law, sentencing benchmarks become nothing more than normative expressions of the sentencing court's predilections; as such, benchmarks are apt to drift in one direction or the other, depending entirely on the viewpoint of the judge who happens to be assigned to the case.
In McPherson's case, for example, if we begin by accepting the twenty to twenty-five year benchmark established below, Judge Johnstone's decision to impose a twenty-year sentence, which falls at the bottom of the range, might appear rational and relatively noncontroversial. Another judge, however, might have selected a wholly different "benchmark" as a starting point  either higher or lower  and come up with a wholly different sentence  but one that would seem equally reasonable if the validity of the benchmark were assumed. In each case, the result of the court's individualized sentencing analysis would largely be predetermined by the wholly subjective and essentially arbitrary benchmark selected as a starting point.
McPherson deserved to have his sentence determined not from an artificially selected starting point, but rather from an individualized consideration of the totality of the circumstances, viewed in the context of the sentencing range specified in the statute. Upon his conviction for misconduct involving a controlled substance in the first degree, McPherson was subject to a minimum sentence of five years and a maximum of ninety-nine. This broad sentencing range appears to reflect the legislature's recognition of the broad range of misconduct encompassed within the definition of the offense. An offender who regularly sold large quantities of drugs to young children for profit would clearly be at the top of this range. In contrast, McPherson's conduct falls distinctly closer to the opposite end of the spectrum.
McPherson was convicted for a single sale of a small quantity of cocaine to an informant who was almost nineteen years of age. Had McPherson's buyer been only slightly older, the offense would have been punishable as a class B felony, subjecting McPherson to a presumptive term of only six years. Although McPherson engaged in more regular commercial sales of marijuana to children  offenses that subjected him to punishment for the lesser offense of misconduct involving a controlled substance in the third degree  the sale of cocaine that led to his conviction of first-degree misconduct involving a controlled substance was evidently an isolated incident and was apparently not commercially motivated. All in all, the sale of cocaine for which McPherson was convicted was a far cry from the paradigm of an unscrupulous dealer selling drugs to hapless youngsters through the school yard fence. Based on McPherson's conduct alone, it would be difficult to justify a sentence significantly exceeding the statutory minimum term of five years.
On the other hand, however, McPherson was no youthful first offender. He was twenty-five years old at the time of the offense and had two prior felony convictions. Moreover, McPherson was still on work release from his most recent conviction. These circumstances are highly relevant to the determination of an appropriate overall sentence. For example, if McPherson had been convicted of the next lower class of drug related offense  the class A felony of second-degree misconduct involving *935 a controlled substance  he would have been subject to a presumptive term of fifteen years. When viewed from this perspective, the twenty-year sentence that McPherson actually received seems far less obviously excessive.
Because of the competing considerations involved in this case, I believe that, although the sentencing court's reliance on an inappropriate sentencing benchmark requires McPherson to be resentenced, the task of determining an appropriate sentence should be left to the superior court on remand. As we have previously said:
Sentencing is primarily a trial court function. It is an individualized process, and appellate courts have traditionally deferred to the trial judge's superior opportunity to evaluate the offender and the offense.
Garrison v. State, 762 P.2d at 469. At this juncture, I think it premature to declare either that a twenty-year sentence would necessarily be excessive or that a fifteen-year sentence would necessarily be acceptable. Accordingly, I would remand for resentencing without expressing a view as to the term that should be imposed below.
NOTES
[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.
[1] We have found two cases in this state where appellate courts have upheld sentences in excess of ten years of imprisonment. In Davis v. State, 577 P.2d 690 (Alaska 1978) the defendant was convicted of five counts of selling heroin and one count of possessing heroin. The supreme court upheld a composite sentence of twenty years of imprisonment. The court concluded that Davis was involved in the sale of substantial amount of heroin on a retail basis and that he was engaged in the heroin business for profit. Id. at 694. In upholding the sentence the court emphasized Davis' "extensive prior criminal record." Id. at 693. Although the court did not set out Davis' prior record, the opinion suggests that Davis was an incorrigible offender with numerous prior felony convictions. In Resek v. State, 715 P.2d 1188 (Alaska App. 1986), the defendant was sentenced for fifteen counts of misconduct involving a controlled substance in the third degree (sale of cocaine) and to one count of misconduct involving a controlled substance in the first degree (engaging in a continuing criminal enterprise). Resek ran a major drug operation which involved the importation of a kilogram of cocaine per week into Anchorage. At the time of the offense, Resek was on probation or parole for another conviction involving sale of cocaine. The trial judge imposed a composite sentence of forty years of imprisonment which we upheld.

Two other cases seem particularly relevant because they involve the transfer of drugs to minors. In Williams v. State, 743 P.2d 397 (Alaska App. 1987) the defendants were convicted of sale of marijuana to minors and possession of psilocybin with intent to deliver to minors. Both offenses are class B felonies. One defendant had no prior record; the other had a prior misdemeanor conviction. The trial court imposed sentences of eleven years with five years suspended. This court, pointing out that the defendants' conduct could actually have constituted an unclassified felony by selling psilocybin to minors, upheld the sentence. In Brandenberg v. State, 705 P.2d 1331 (Alaska App. 1985) the defendant was convicted of misconduct involving a controlled substance in the third degree (sale of cocaine), a class B felony. Brandenberg was a first felony offender. The trial judge imposed a sentence of eight years with three years suspended. This court upheld the sentence. We pointed out that Brandenberg was involved in selling relatively large amounts of cocaine over a long period of time. Id. at 1333. We emphasized that Brandenberg had employed a seventeen-year-old minor "as an active and integral part of his illicit drug dealings. The minor's participation was not an isolated incident, but rather continued over a protracted period of time and extended to virtually all aspects of Brandenberg's operation." Id.