**John Lee WILLIAMS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3434.**

Court of Appeals of Alaska.

April 19, 1991.

Thomas A. Ballantine, III, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Mary Anne Henry, Acting Dist. Atty., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

## OPINION ON REHEARING

Before: BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

BRYNER, Chief Judge.

This case comes to us on remand from the Alaska Supreme Court with directions to reconsider our original opinion, *Williams v. State*, 800 P.2d 955 (Alaska App.1990), in light of the supreme court's recent opinion in *State v. Wentz*, 805 P.2d 962, (Alaska 1991). Although we find that *State v. Wentz* requires clarification of our original opinion, we adhere to the conclusion that Williams' composite sentence was clearly mistaken and that his case must be remanded for a total sentence that does not exceed forty years with ten years suspended.

In *State v. Wentz*, the supreme court reviewed this court's decision in *Wentz v. State*, 777 P.2d 213 (Alaska App.1989). *Wentz* was a sentence appeal involving a sentence of fifteen years with three years suspended for a first felony offender convicted of assault in the first degree, a class A felony. *State v. Wentz*, 805 P.2d at 963; *Wentz v. State*, 777 P.2d at 215. Our decision relied on several of our own prior sentencing decisions establishing a rule which, with limited exceptions, restricted sentences for first felony offenders convicted of class A felonies to composite terms of no more than ten years of unsuspended time. *Wentz v. State*, 777 P.2d at 216. Applying this rule in *Wentz*, we concluded that an unsuspended term of twelve years rather than ten years was excessive. *Id.*

In reversing this court's decision, the supreme court rejected our reliance on the ten-year sentencing limit. Specifically, the supreme court found that our judicially-created sentencing limit encroached on the broad scope of authority expressly vested by the legislature in the sentencing court. Also, the supreme court found that our rigid application of the ten-year limit contravened the "clearly mistaken" standard of sentencing review adopted in *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). *See State v. Wentz*, 805 P.2d at 965. In this regard, the supreme court emphasized:

> Whether a particular offense is sufficiently serious to justify placing it in the upper rather than lower end of the sentencing range, however, cannot be determined with mathematical certainty. Such questions are not easily resolved by resort to "bright line" rules or pronouncements concerning the "correct" sentence to be applied under varying factual circumstances. For example, it cannot be stated categorically that a felony assault committed by an offender with a long string of prior misdemeanor assaults is necessarily less serious than a felony assault committed by an offender with a single prior felony conviction. Such questions must be answered by reference to the particular facts of the individual case, and are therefore matters properly left to the sound discretion of the sentencing judge.

*Id.* at 966.

The supreme court further emphasized that the appropriate sentence must in each case be based upon a consideration of all the sentencing criteria established in *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970), and enumerated in AS 12.55.005. *Id.* at 964, 965 The court expressed the core of its ruling in the following terms:

> As we observed in *Creer v. State*, 600 P.2d 1095 (Alaska 1979), "[s]entencing must be based on the facts of the particular offense and the history of the individual defendant." *Id.* at 1095–96. We believe that the rigid approach applied by the court of appeals in the instant case

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

tends to undercut this principle by artificially grouping substantially different offenses and offenders together in the lower end of the authorized sentencing range.

*Id.* at 966–967.

Our decision in *Williams* differs significantly from the decision that the supreme court reviewed and reversed in *Wentz.* Most notably, in *Williams* we did not purport to formulate or apply any hard and fast sentencing rule restricting the appropriate sentence for a broad class of disparate offenders or limiting the factors that could properly be taken into account in deciding the relative seriousness of a particular case. Instead, our opinion collected past sentencing decisions involving offenders convicted of crimes generally similar to Williams' and organized them into benchmark sentencing ranges.

Our primary purpose in so doing was to obtain some idea of the length of time that would, in Williams' case, fall within the "permissible range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify." *McClain,* 519 P.2d at 813 (quoted in *State v. Wentz,* 805 P.2d at 965). More generally, we hoped that our review of case law and formulation of sentencing ranges would provide assistance and guidance to sentencing courts faced with difficult sentencing decisions in comparable cases.

Our benchmarks in *Williams* and other cases are not intended to be inflexible rules confining the permissible range of a sentence in a given case; rather, they are meant to act as historically-based starting points for individualized analysis in each case:

> A basic precept of sentencing is that, in each case, the defendant's sentence must be based upon an individualized consideration of the offender and the offense. To lend structure and uniformity to this process, we have occasionally established benchmark sentences for particular types of crimes. These benchmarks, however, have all been predicated upon our review of past sentencing decisions dealing with similarly situated offenders. In establishing benchmarks, we have attempted to synthesize historical sentencing practices for specific types of offenses in order to provide realistic, experientially based sentencing norms for guidance in future similar cases. Notably, we have never attempted to create sentencing benchmarks based on our abstract notions of what a typical sentence for a given offense ought to be.

*McPherson v. State,* 800 P.2d 928, 933 (Alaska App.1990) (Bryner, C.J., concurring and dissenting) (citations omitted).

If the benchmarks we referred to in originally deciding the present case are susceptible of being interpreted in some other way, perhaps the fault lies in a lack of clarity in our opinion. Even when great care is taken to avoid the pitfalls of overgeneralization, it is inherently difficult to review and organize prior case law without creating an appearance of rigidity and inflexibility, that is, without generating the impression that past experience must necessarily define and delimit future.

 To the extent that our use of benchmarks in this or other cases is subject to misinterpretation, we reiterate that, appropriately applied, benchmarks are meant only to provide a framework for individualized analysis in each given case, based upon the applicable sentencing criteria specified in *Chaney* and AS 12.55.005. If the language of our original opinion in this case, or any of our other cases, suggests that sentencing benchmarks establish hard and fast limits, we disapprove that language. We similarly disapprove any language in this or prior cases suggesting that the benchmarks we have described can only be deviated from when certain specific, limited exceptions are established.[1] We

---

1. In particular, in our original opinion in this case, we referred to the "dangerous offender" concept established by the A.B.A. Standard for Criminal Justice. *See Williams,* 800 P.2d at 959 n. 5 (citing III *Standards for Criminal Justice*

§ 18–4.4(c) (1982)). Reliance on the "dangerous offender" concept is inappropriate in light of *State v. Wentz,* except to the extent that the concept is considered as one of numerous potentially relevant factors bearing on the issue of

stress that any sound reason may be relied on to differentiate one case from another. The legitimate role of benchmarks is to promote careful consideration of whether actual differences exist between a given case and prior, generally similar cases, and to encourage courts to make clear their reliance on those differences when they do exist.

We do not understand *State v. Wentz* to preclude or discourage the use of benchmarks in this limited way; regardless of any suggestion to the contrary in the language of our original opinion, this is the only way in which we meant to use benchmarks in this case.

Although *State v. Wentz* might be read as discouraging even this limited use of benchmarks, we see little basis for reading the supreme court's decision in such sweeping terms. In fact, it would be difficult to carry out the basic legislative goals embodied in Alaska's sentencing statutes without giving careful, systematic attention to historical sentencing practices for particular types of offenses.

In establishing our current sentencing laws, Alaska's legislature departed from prior law by according fundamental importance to the dual sentencing goals of promoting uniformity and eliminating unjustified disparity. The legislature was motivated by concern over sentencing studies indicating significant disparity in felony

sentences that could not be explained by any "legally relevant sentencing criteria." *See* DiPietro, *The Development of Appellate Sentencing Law in Alaska,* 7 Alaska L.Rev. 265, 278 (1990). *See also* Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 148–49, 1978 Senate Journal 1399.[2]

The legislature expressed its concern over disparity with unmistakable clarity in AS 12.55.005, whose opening paragraph declares:

The legislature finds that the elimination of unjustified disparity in sentences and the attainment of reasonable uniformity in sentences can best be achieved through a sentencing framework fixed by statute as provided in this chapter.[3]

In the same statutory provision, the legislature went on to list six factors for the sentencing court to consider in each case. Factors (2) through (6) of AS 12.55.005 restate the sentencing criteria previously articulated by the Alaska Supreme Court in *State v. Chaney,* 477 P.2d at 443–44. *See* Commentary on the Alaska Revised Criminal Code, Senate J.Supp. No. 47 at 148–49, 1978 Senate Journal 1399. Paragraph (1) of the statute, however, was added to the pre-existing *Chaney* criteria for the express purpose of eliminating disparity and promoting uniformity. *Id.* This factor requires the sentencing court, in determining the appropriate sentence, to consider "the

an offender's prospects for rehabilitation and the level of danger that the offender might pose in the future.

2. In fact, one study revealed the identity of sentencing judges as the single most important factor influencing the length of sentences. *See* Alaska Judicial Council, *Alaska Felony Sentencing Patterns: A Multivariate Statistical Analysis* (1974–1976), at iii, 40–46 (1977). This study specifically influenced the Alaska legislature in formulating our current sentencing statutes. *See* Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 148–49, 1978 Senate Journal 1399.

3. The full text of AS 12.55.005 is as follows:

**Declaration of purpose.** The purpose of this chapter is to provide the means for determining the appropriate sentence to be imposed upon conviction of an offense. The legislature finds that the elimination of un-

justified disparity in sentences and the attainment of reasonable uniformity in sentences can best be achieved through a sentencing framework fixed by statute as provided in this chapter. In imposing sentence, the court shall consider

(1) the seriousness of the defendant's present offense in relation to other offenses;

(2) the prior criminal history of the defendant and the likelihood of rehabilitation;

(3) the need to confine the defendant to prevent further harm to the public;

(4) the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order;

(5) the effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct; and

(6) the effect of the sentence to be imposed as a community condemnation of the criminal act and as a reaffirmation of societal norms. (§ 12 ch. 166 SLA 1978)

seriousness of the defendant's present offense in *relation to other offenses....*" (Emphasis added.) Paragraph (1) of AS 12.55.005 thus expressly mandates that a court seeking to determine an appropriate sentence in a given case make its decision by considering the case before it in relationship to other cases.

In our view, the periodic collection and synthesis of generally similar cases into benchmark ranges is compatible with the requirements of AS 12.55.005(1). Compliance with paragraph (1) would be difficult, if not impossible, without a general awareness of sentencing practices in similar cases. Benchmarks promote compliance with the mandate of paragraph (1) by providing a meaningful basis to assist in determining whether a given sentence so far departs from the principle of reasonable uniformity as to be clearly mistaken.

Likewise, benchmarks can be helpful in considering whether a particular sentence meets the traditional *Chaney* sentencing criteria, as expressed in AS 12.55.005(2)–(6). Past sentencing decisions collected into benchmark sentences provide a reliable indicator that the *Chaney* criteria have been fulfilled for certain categories of cases by sentences within a certain range. If the sentencing court, upon careful consideration of all pertinent information, can find no significant distinction between past cases and the case before it, the past cases will furnish a reliable indicator that the *Chaney* criteria can be met by the imposition of a similar sentence.

The need to impose an individualized sentence in each case does not compel a total disregard of established sentencing practices for similar categories of offenses and offenders. To the contrary, while an intrinsic tension may exist between the requirements of individualized sentencing and the need for reasonable sentencing uniformity, in the long run this tension can meaningfully be resolved only through awareness of existing sentencing practices and consideration of the case at hand in relation to other similar cases.

■ Again, we emphasize that, when properly used, sentencing benchmarks should promote, and not preclude, individualized consideration of all relevant information. At a minimum, however, the principle of reasonable sentencing uniformity requires a sentencing judge who decides that an offender deserves a sentence which is significantly different from sentences previously given to similarly situated offenders to expressly find some legitimate basis for the difference—some basis related to "legally relevant sentencing criteria." Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 148–49, 1978 Senate Journal 1399. That basis should be spelled out on the sentencing record, so that the defendant and a reviewing court can understand the reasons for the disparity.

■ In the present case, the sentencing court does not appear to have considered the seriousness of Williams' conduct in relation to other offenses. Although the court gave general consideration to the sentencing factors enumerated in paragraphs (2) through (6) of AS 12.55.005, it did not consider or mention the factor listed in paragraph (1). There is no indication in the record that the court was aware of past sentencing practices in kidnap/rape cases generally or that it realized that the composite sentence it imposed significantly exceeded sentences received by many prior similarly situated offenders—offenders whose backgrounds were generally similar to Williams' and who were convicted of similar crimes for comparably serious conduct.

Because the sentencing court apparently did not consider Williams' case in relation to other similar cases, it made no effort to differentiate Williams' sentence from sentences imposed in other kidnap/rape cases. The court did not find Williams' conduct to be more serious than the conduct in cases of offenders convicted of like crimes who received composite sentences totaling thirty years or less; nor did the court find Williams' background to be distinguishable from the background of offenders in such cases.

Both before this court and the sentencing court, the state has likewise failed to

recognize the requirements of AS 12.55.-005(1). Even in its petition for hearing to the supreme court, the state does not seem to have acknowledged AS 12.55.005(1). Apart from arguing that the maximum penalty for sexual abuse has recently been increased, the state makes no attempt to explain how the significant disparity that appears to exist between Williams' sentence and sentences received by prior similarly situated offenders can be justified.

In our original opinion and now, we have independently attempted to find some reason "related to legally relevant sentencing criteria" [4] to justify the seeming sentencing disparity in this case. In almost all respects, both in terms of background and conduct, Williams' case appears similar to cases of offenders for whom composite terms of no more than thirty years' of imprisonment have been approved; Williams' case also seems markedly dissimilar to cases in which significantly higher sentences have been affirmed.

The one potentially significant factual distinction between this case and others—Williams' choice of an eleven-year-old child as a victim—does not appear to justify the significant disparity. As we noted in our original opinion, this factor unquestionably rendered Williams' overall conduct more serious than it would otherwise have been, but it is more than offset by aggravating factors in the cases of various offenders who have been sentenced to no more than thirty years—aggravating factors that are not present in Williams' case.[5]

We have also carefully considered all of the evidence in the sentencing record pertaining to Williams' background and have found no plausible basis for distinguishing his case from prior cases involving offenders who have received terms of thirty years or less in kidnap/rape cases. In fact, as we indicated in our original opinion, Williams' overall criminal history appears to be less serious than that of offenders who previously received thirty years or less for similar crimes. *Williams*, 800 P.2d at 960.

Finally, we have considered the state's argument that the benchmark ranges we described for prior kidnap/rape cases may be invalid because of recent changes in the law. The state rests its argument on the fact that first-degree sexual assault and

---

**4.** Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 148–49, 1978 Senate Journal 1399.

**5.** *See Williams*, 800 P.2d at 960. Because the legislature has made both first-degree sexual assault and first-degree sexual abuse of a minor unclassified felonies punishable by identical penalties, sexual abuse of a minor is not *per se* more serious than sexual assault on an adult. There is thus no basis for concluding that the age of Williams' victim automatically justifies a significantly higher range of sentence in his case. Nor did the sentencing court in this case purport to make such a finding. As we indicated in our original opinion, the overall seriousness of Williams' conduct—taking into account the age and vulnerability of the victim—appears comparable to the seriousness of other cases involving offenders sentenced to thirty years or less:

> Williams' case appears similar to cases such as *Hintz, Tookak,* and *Patterson.* One significant distinction, however, is that Williams' victim was an eleven-year-old child, whereas the victims in *Hintz, Tookak,* and *Patterson* were adults. The age and relative vulnerability of Williams' victim is to some extent offset, however, in *Hintz, Tookak,* and *Patterson* by aggravating circumstances that are absent

here. For instance, the offenders in *Hintz, Tookak,* and *Patterson* were armed with handguns. All three cases involved abductions that apparently lasted considerably longer than in the present case. In *Hintz* and *Tookak,* the victims were released under life-threatening circumstances. Moreover, the defendants in *Patterson* and *Tookak* had prior criminal histories considerably more extensive than Williams'.

*Id.* (citing *Hintz v. State*, 627 P.2d 207 (Alaska 1981); *Patterson v. State*, 689 P.2d 146 (Alaska App.1984); *Tookak v. State*, 648 P.2d 1018 (Alaska App.1982)).

In considering the overall seriousness of Williams' conduct in relation to other offenders, we have considered it relevant that the superior court found only one statutory aggravating factor in this case—that Williams was on probation at the time of the offense. Notably, although the sentencing court found Williams' overall conduct to be extremely serious, the court did not find, and the state did not allege, that his conduct was among the most serious within the definition of the offenses for which Williams was convicted. *See* AS 12.55.-155(c)(10). Nor did the court find, or the state allege, that Williams' victim was particularly vulnerable by virtue of extreme youth or for any other reason. *See* AS 12.55.155(c)(5).

first-degree sexual abuse are currently unclassified felonies punishable by maximum terms of thirty years. In almost all the prior kidnap/rape cases we have considered, the defendants were convicted of sexual assault under prior law, which established a maximum sentence of twenty years.

The state's argument is unpersuasive for two independent reasons. First, the mere fact that the legislature expanded the maximum possible sentence for sexual assault and sexual abuse of a minor does not necessarily establish a legislative intent to increase sentences for those offenses across the board. *See, e.g., Pears v. State,* 698 P.2d 1198 (Alaska 1985). Second, and perhaps more significantly, in Williams' case and in almost all the prior cases we relied on for our benchmarks, the most serious offenses have been the unclassified felonies of kidnapping, which have provided the primary basis for the exceptionally lengthy composite sentences considered in these cases. In contrast to the penalties for sexual assault and sexual abuse of minors, the penalties for the more serious crime of kidnapping have remained relatively stable at all pertinent times.[6] Given the constancy of the maximum penalty for the more serious offense of kidnapping, there appears to be little reason to believe that changes in penalties for the lesser offenses of first-degree sexual assault and first-degree sexual abuse of minors should significantly impact composite sentences in kidnap/rape cases.

In short, our review of prior sentencing decisions involving similar offenders convicted of similar misconduct convinces us that an unsuspended term of thirty years in Williams' case would satisfy all of the sentencing criteria adopted in *State v. Chaney* and set out in paragraphs (2) through (6) of AS 12.55.005. While these same criteria—with the possible exception of the

goal of rehabilitation—might as readily be served by the composite forty-one year unsuspended term imposed upon Williams by the superior court, the forty-one year term would appear unjustified under AS 12.55.-005(1). When Williams' offense is considered in relation to other offenses, the apparent disparity in Williams' sentence does not appear to be based on any distinguishing factor "related to legitimate goals of sentencing."[7] The sentencing court did not explain or justify the apparent sentencing disparity, and we are unable to find any reasonable explanation in the sentencing record.

Having independently reconsidered the entire sentencing record in light of all of the factors enumerated in AS 12.55.005 and in light of the supreme court's decision in *State v. Wentz,* we conclude, as we did originally, that the sentence imposed below is clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974). Accordingly, we adhere to our original conclusion that the sentence must be REVERSED.

MANNHEIMER, J., not participating.

---

**6.** Prior to enactment of the Alaska Revised Criminal Code, kidnapping was punishable by a maximum term of life imprisonment, whereas the offense is currently punishable by a maximum of ninety-nine years. *Compare* former AS 11.15.260 *with* AS 11.41.300(c) and AS 12.55.-125(b). In the limited context presented here,

we find no significant differences between the maximum permissible terms under former and current law.

**7.** Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 148–49, 1978 Senate Journal 1399.