Russell HAIRE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4826.

Court of Appeals of Alaska.

July 29, 1994.

Thomas A. Ballantine, III, for appellant.

Robert J. Collins, Asst. Dist. Atty., Edward E. McNally, Dist. Atty., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

BRYNER, Chief Judge.

Russell D. Haire pled no contest to an information charging him with two counts of sexual abuse of a minor in the first degree. AS 11.41.434(a)(1). In return for Haire's no contest pleas, the state dismissed a ten-count indictment accusing Haire of multiple acts of first- and second-degree sexual abuse of minors, as well as of unlawful exploitation of a minor and misconduct involving a controlled substance in the third degree; the state also agreed to a total sentencing cap of twenty-five years' imprisonment.

Haire's offenses are unclassified felonies, punishable by maximum terms of thirty years. AS 12.55.125(i). As a first felony offender, Haire was subject to presumptive terms of eight years. Haire proposed no mitigating factors and conceded the existence of four statutory aggravating factors proposed by the state: that the victims were particularly vulnerable due to extreme youth; that the offenses involved more than one victim; that his conduct was among the most serious included in the definition of the offense; and that the offenses were committed against family members who were living with him. AS 12.55.155(c)(5), (9), (10), and (18). Superior Court Judge Karen L. Hunt sentenced Haire to consecutive terms totalling twenty-five years with two suspended. Haire appeals, contending that his sentence is excessive. We remand for further consideration and additional findings.

Haire's convictions stem from his sexual abuse of two stepdaughters, who were then nine and seven years old, and numerous other young children who were friends of Haire's stepchildren. The abuse lasted over a period of approximately four months and consisted of numerous and varied acts of sexual contact and penetration. During this time, Haire displayed X-rated videos to his stepchildren and their companions and offered them cigarettes, liquor, and marijuana. He then engaged in sexual contact with them. Haire would at times entice his young

victims into collective sexual activity, both with him and among themselves. Haire photographed these activities and had various children take photographs of each other, unclothed and in sexually explicit poses. To prevent disclosure of his activities, Haire threatened to reveal photographs of his victims if they reported his acts of abuse. After the abuse was reported and an investigation commenced, Haire threatened the parents of at least one of his victims with public disclosure of their child's photographs if they cooperated with the investigation. Abundant evidence at the sentencing hearing established that Haire's victims and their families suffered devastating psychological and emotional trauma as a result of Haire's crimes.

Although Haire was nominally a first offender, evidence at the sentencing hearing established that he had a long history of sexually and physically abusive conduct, which included sexual and physical abuse of his former wife, who was a fourteen-year-old runaway when Haire initially met and became involved with her, as well as repeated sexual abuse of his and his former wife's daughter, who was between two and four years old at the time of the abuse. A psychological evaluation prepared at Haire's request for sentencing purposes found Haire to be "in the highest risk category for continued molesting of children" and concluded:

> The treatment prognosis is guarded at best for Russell. His personality organization leads to a great deal of grandiosity, suspicion, and a tenuous reality base. These aspects in concert will make it difficult for him to accept the kind of confrontational therapy that is the treatment of choice for the sexual perpetrator.

Haire's own statements at the sentencing hearing tended to confirm this description. In the course of a rambling allocution, although grudgingly and somewhat vaguely acknowledging responsibility for a limited number of the inappropriate acts underlying his charges, Haire discounted, disputed, and denied most of the accusations and depicted himself as the true victim in the case: a victim of society, of the legal system, of his own attorney, of his former wife, of the inmates with whom he was incarcerated, of the parents of his victims, and, remarkably, even of the children whom he had abused.

In imposing sentence, the superior court accepted as established the four aggravating factors proposed by the state. Finding Haire's case "exceptionally aggravated on the defendant's conduct alone," the court sentenced Haire to adjusted presumptive terms of twelve and one-half years with one year suspended on each count. These sentences were imposed consecutively, for a composite term of twenty-five years with two years suspended.

■ On appeal, Haire first argues that the sentencing court failed to expressly find that the state's proposed aggravating factors were supported by the evidence. Haire acknowledges that he conceded the applicability of the factors; he nevertheless contends that the court had an independent duty to determine that the proposed aggravating factors actually had a factual basis in the evidence. *See Connolly v. State*, 758 P.2d 633, 638 (Alaska App.1988). Although the sentencing court did not expressly find sufficient evidence to support the proposed aggravating factors, our own review of the record convinces us that there was ample information to establish each proposed factor by clear and convincing evidence. The sentencing court's detailed remarks addressing the aggravated nature of Haire's crimes make it clear that the court was aware of, and gave appropriate weight to, this evidence. We find no plain error.

■ Haire next alleges that his total sentence of twenty-five years with two years suspended is disproportionately high. He relies on the ten- to fifteen-year benchmark this court established in *State v. Andrews*, 707 P.2d 900, 913 (Alaska App.1985), as the generally appropriate sentencing range for aggravated first-degree sexual assault and sexual abuse cases involving first felony offenders. Haire complains that the sentencing court failed to consider the seriousness of his offenses in relation to the offenses of other first offenders who have received sentences falling within the *Andrews* benchmark range.

In *Williams v. State*, 809 P.2d 931, 935 (Alaska App.1991), we noted that,

> while an intrinsic tension may exist between the requirements of individualized sentencing and the need for reasonable sentencing uniformity, in the long run this tension can meaningfully be resolved only through awareness of existing sentencing practices and consideration of the case at hand in relation to other similar cases.

We found the consideration of each case in relation to other similar cases to be warranted by the principle of sentencing uniformity, expressed by the legislature with "unmistakable clarity" in AS 12.55.005(1), which requires the sentencing court to consider "the seriousness of the defendant's present offense in relation to other offenses." *Williams*, 809 P.2d at 934. We concluded:

> At a minimum, ... the principle of reasonable sentencing uniformity requires a sentencing judge who decides that an offender deserves a sentence which is significantly different from sentences previously given to similarly situated offenders to expressly find some legitimate basis for the difference—some basis related to "legally relevant sentencing criteria." That basis should be spelled out on the sentencing record, so that the defendant and a reviewing court can understand the reasons for the disparity.

*Id.* at 935 (citation omitted).

In the present case, while it did not specifically consider sentences received by other similar offenders, the sentencing court was generally aware of the *Andrews* benchmark when it fashioned Haire's sentence. In relevant part, the court stated:

> I must follow the *Andrews* decision and its [progeny]. And that is a decision that makes it clear that even an aggravated sentence cannot exceed fifteen years maximum when it is the defendant's first conviction for the crime of sexual abuse of a minor. Under these decisions and the record before me, I find that the defendant's sexual abuse was perpet[rated] upon multiple victims on multiple occasions. In addition, he has committed multiple assaults upon the same single victim on multiple occasions. Given this inherently aggravated conduct of the defendant, as well as the applicability of the specific statutory aggravators, I conclude that the sentencing goal of protection of the minor public requires that the defendant be isolated for the maximum period allowed under the *Andrews* line of appellate decisions. And I find that each of the counts for which he stands before the court for sentencing should be considered as separate counts and he will be given the maximum sentence up to the [negotiated total twenty-five-year sentencing] cap on each count.

Although the sentencing court's awareness of, and its declared willingness to follow, the applicable sentencing benchmark would, under ordinary circumstances, satisfy the requirement of considering Haire's case in relation to other similar cases, the sentencing remarks quoted above indicate that the court in this case misunderstood the *Andrews* benchmark in two significant respects, one relating to the scope of the benchmark and the other to its flexibility.

With respect to the benchmark's scope, the court was mistaken in its apparent belief that consecutive terms of up to fifteen years per count (or twelve and one-half years in this case due to the negotiated twenty-five-year total sentencing cap) would fall within the *Andrews* benchmark range. The benchmark specified in *Andrews* was not meant to apply on a count-by-count basis. In *Andrews*, this court recognized a benchmark sentencing range of ten to fifteen years to serve for first offenders convicted of aggravated instances of child sexual abuse. We defined an "aggravated" case as one in which the defendant had abused multiple victims, had committed multiple assaults on a single victim, or had inflicted serious injury to one or more victims. *Andrews*, 707 P.2d at 913. The *Andrews* benchmark was thus meant to indicate the appropriate range for the total sentence that would ordinarily be justified for a first offender convicted in an aggravated case of first-degree sexual assault or abuse. Here, although the sentencing court evidently believed that the sentences it imposed fell within the *Andrews* benchmark range, Haire's composite term of twenty-five years with two

years suspended significantly exceeds that range.

 The sentencing court was also apparently mistaken with respect to the flexibility of the *Andrews* benchmark. The sentencing court's reference to the "maximum period allowed under the *Andrews* line of appellate decisions" seems to indicate that the court viewed *Andrews* as establishing the maximum permissible term for a first offender in Haire's shoes. This is an inaccurate view of the benchmark's function: "Sentencing benchmarks place no hard and fast restrictions on the scope of the sentencing court's authority in any given case." *Ross v. State,* 877 P.2d 777, 780 (Alaska App.1994).

As we observed recently in *Sharp v. State,* 837 P.2d 718, 727 (Alaska App.1992):

> [T]he 10– to 15–year benchmark range established in *Andrews* is not an inflexible rule of law, but rather an historically based starting point for analyzing Sharp's sentence under the particular facts of his case. If there are articulable and valid reasons for imposing a sentence outside that benchmark range, the resulting sentence will not be clearly mistaken. *Williams v. State,* 809 P.2d 931, 933–35 (Alaska App. 1991).

With specific reference to the *Andrews* benchmark, this court has consistently recognized that a composite term exceeding fifteen years will be appropriate when a first felony offender is convicted in an exceptionally aggravated case of first-degree sexual assault or abuse. *Sharp,* 837 P.2d at 726; *Howell v. State,* 758 P.2d 103, 107 (Alaska App.1988). In such exceptional first-offense cases, we have typically approved composite sentences involving up to twenty years of unsuspended incarceration; on rare occasions, when faced with particularly convincing reasons, we have approved even longer first-offense sentences—sentences in the range of Haire's:

> In several exceptionally aggravated cases we have approved sentences in excess of the ten- to fifteen-year benchmark for first offenders. These cases have involved multiple offenses and multiple victims. Even so, we have never approved a first offender sentence of more than twenty years of unsuspended incarceration except when the defendant used a significant amount of violence, had previously been incarcerated for a substantial period, or both.

*Howell,* 758 P.2d at 107.

In the present case, the sentencing court expressly found that Haire's case was exceptionally aggravated and gave a detailed and comprehensive explanation of its reasons for so finding. Our review of the sentencing record discloses nothing to indicate that the court erred in its characterization of the seriousness of Haire's conduct. The sentencing court's findings, coupled with the fact that Haire was convicted for conduct involving both multiple victims and multiple assaults committed over a significant period of time,[1] strongly suggest that his case is deserving of inclusion among other exceptionally aggravated cases. And, even though Haire has never previously been incarcerated and does not appear to have used significant violence—the characteristics identified in *Howell* as distinguishing first-offense cases in which sentences of more than twenty years have been approved—it is conceivable that other extraordinary factors may be identified to justify an unsuspended term in excess of twenty years.[2]

Nevertheless, the determination of an appropriate sentence is a matter for the sentencing court in the first instance, and Haire

---

**1.** *Andrews'* definition of an "aggravated" case as one in which the defendant abuses multiple victims, or commits multiple assaults on a single victim, or inflicts serious injury to one or more victims, *Andrews,* 707 P.2d at 913, indicates that cases involving both multiple assaults and multiple victims may appropriately be treated as exceptionally aggravated.

**2.** In *State v. Hernandez,* 877 P.2d 1309 (Alaska App.1994), we emphasized that sentencing guide-

lines such as those exemplified in *Andrews* "are not static. They are descriptive rather than prescriptive, reflecting historical trends rather than establishing future imperatives. Courts ... must thus remain sensitive to change and receptive to the possibility that, in any given case, unique facts, unusual circumstances, or evolving social norms may justify a departure from historically established sentencing practices."

is entitled to a sentence that is based on a correct application of the sentencing principles governing his case. The sentencing court, having taken the mistaken view that the sentence it imposed fell within the *Andrews* benchmark, did not have occasion to consider Haire's conduct in relation to the conduct of other first felony offenders for whom total sentences exceeding fifteen years have been approved.[3] Because the sentence actually imposed was based on an incorrect interpretation of the *Andrews* sentencing benchmark and because the sentencing court did not evaluate Haire's case in relation to other cases in which sentences exceeding this benchmark have been imposed, we must vacate the sentence and remand this case for resentencing.

The sentence is **VACATED.** This case is **REMANDED** for resentencing in conformity with this opinion.

---

3. We have surveyed and commented on the cases falling in this category on two occasions. *Sharp,* 837 P.2d at 726; *Howell,* 758 P.2d at 107. We note that, at the sentencing hearing, the state relied primarily on *Curl v. State,* 843 P.2d 1244 (Alaska App.1992). In the context of the present case, *Curl* is largely inapposite, since it involved a second felony offender who was subject to a presumptive term of fifteen years—almost twice the presumptive term that served as the starting point for sentencing in the current case.