Joseph M. RUDDEN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4769.

Court of Appeals of Alaska.

Sept. 30, 1994.

David B. Koch, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

A jury convicted Joseph M. Rudden of attempted first-degree murder. AS 11.41.-100(a)(1); AS 11.31.100(a). Attempted first-degree murder is an unclassified felony, punishable by a minimum term of five years and by a maximum term of ninety-nine years. AS 12.55.125(b). Superior Court Judge Thomas E. Schulz sentenced Rudden to serve thirty-five years in prison. Rudden contends that this sentence is excessive.

Rudden was convicted of attempted first-degree murder for shooting a service station mechanic twice at close range, once in the chest and once in the hip. Rudden's victim suffered severe and lasting injuries as a result of the shooting. The state's evidence established that the shooting was virtually unprovoked. In convicting Rudden of the offense, the jury rejected his claim of self-defense and declined the option of convicting him of lesser-included offenses ranging from first- through fourth-degree assault.

Rudden was forty-eight years old at the time of the offense. Although nominally a first felony offender, Rudden had an extensive criminal history. Between 1966 and 1990, Rudden was convicted of theft-related offenses on five occasions. In 1973, he was convicted of assaulting a police officer and assault with a deadly weapon. He repeated-ly absconded from probation on the latter charge. When Rudden committed his current offense, three misdemeanor assault charges were pending against him in the state of Washington.

A pretrial psychiatric evaluation discloses that Rudden "probably has an antisocial personality disorder" and notes that he "becomes angry and threatening when he perceives himself to be threatened or when others do not act according to his wishes...." While incarcerated in the interim between his arrest on January 9, 1992, and his sentencing almost a year later, Rudden amassed an institutional record of repeated violent outbursts. As an institutional probation officer incisively noted: "[B]asically, Mr. Rudden has a short fuse."

In imposing sentence, Judge Schulz emphasized the serious and unprovoked nature of Rudden's crime. The judge also considered Rudden's criminal record and poor performance on probation, which, although "spread out over a period of time," demonstrated "that he has had a significant problem, a significant difficulty over the years in complying with the law." In Judge Schulz' view, Rudden "was well aware of what he was doing when he took the gun out and pulled the trigger." The judge noted that Rudden had demonstrated that "when he gets mad, he's dangerous." These factors led Judge Schulz to assess Rudden's potential for rehabilitation as follows: "I don't think it's very good in this case."

The judge thus elected to downplay rehabilitation and give priority to the goals of deterrence and community condemnation. The state requested that Rudden be sentenced to a term of fifty years' imprisonment. Judge Schulz rejected the state's request, finding that a fifty-year term would be excessive. Rudden, for his part, compared his offense to a first-degree assault. First-degree assault is a class A felony; had Rudden been convicted of the offense, he would have been subject to a presumptive term of seven years and to a maximum term of twenty. Rudden characterized his case as a "significantly aggravated first-degree assault case" and urged the court to determine an appro-

priate sentence based on this characterization.

Judge Schulz refused Rudden's attempt to liken his conduct to an aggravated first-degree assault, commenting that

> it would be entirely improper, it would do substantial injustice to the *Chaney* criteria to treat this case as an aggravated first-degree assault, both because of the nature of the offense and because I think this court would be dealing kind of high-handedly with the jury verdict in this case.

Judge Schulz sentenced Rudden to a term of thirty-five years.

On appeal, Rudden takes issue with Judge Schulz' failure to give greater weight to rehabilitation as a sentencing goal. However, determining the priority and relationship of the various goals of sentencing is primarily a matter for the sentencing court; the court need not emphasize rehabilitation in all cases, or even in all cases involving first offenders. *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973). The record supports Judge Schulz' conclusion that Rudden's prospects for rehabilitation are relatively poor. Given the seriousness of Rudden's crime, Judge Schulz was not clearly mistaken in deciding to emphasize sentencing goals other than rehabilitation.

Rudden next urges us to bear in mind that, until 1988, attempted first-degree murder, like first-degree assault, was a class A felony and was punishable by a maximum term of only twenty years' imprisonment. Rudden further argues that the legislature's decision to increase the maximum penalty for attempted first-degree murder "does not necessarily establish a legislative intent to increase sentences for those offenses across the board." *Williams v. State*, 809 P.2d 931, 937 (Alaska App.1991). This argument has little actual bearing on the outcome in Rudden's case, regardless of its accuracy.[1]

Assuming that the legislature's upgrade of attempted first-degree murder from a class A felony to an unclassified felony did not necessarily signal its desire for an across-the-board upgrade in sentencing for the crime, the upgrade appears to have been intended at least to reflect the exceptionally broad range of conduct encompassed within the definition of attempted first-degree murder and the consequent need for a correspondingly broad range of sentencing alternatives.

At one extreme, an attempted first-degree murder might cause no injury at all to the victim and might involve conduct falling far short of any immediate threat of deadly harm—the type of slight step beyond mere preparation that minimally qualifies as an attempt. By contrast, at the opposite extreme, an attempted first-degree murder might consist of a completed act of calculated deadly force that, through no lack of effort or intent by the offender, happens to fall slightly short of the mark, causing lasting and near-fatal injuries instead of death.

While the legislature may have contemplated little change in sentencing practices for typical attempts—cases falling in the middle of this spectrum—its decision to reclassify attempted first-degree murder was plainly meant to diminish sentencing discretion at the low end of the spectrum, where a mandatory minimum term is now prescribed, and to provide significantly greater leeway at the high end, where the maximum term is now equivalent to the maximum available for the completed crime of murder. The underlying reason for the legislature's decision to authorize similar maximum penalties for attempted murder and murder is not difficult to discern. As the gap between attempt and completion narrows, the justification for disparate treatment of an offender convicted of attempted murder, on the one hand, and an offender convicted of the completed crime, on the other, diminishes commensurately; as

---

1. We note that there is sound reason to question the accuracy of this argument in the context of the amended first-degree murder statute. The legislature's decision to enact a substantial increase in the maximum penalty for attempted first-degree murder might, standing alone, indicate nothing more than a desire to make higher sentences available in the most serious cases of attempted first-degree murder. However, the legislature's decision to require a mandatory minimum sentence of five years' imprisonment, a provision that governs even the most mitigated cases, necessarily reflects a significantly broader legislative intent.

the crimes grow similar, so should the sentences.

We certainly do not suggest that attempted murderers and murderers should be treated alike, even in extreme cases of attempt. An offender convicted of attempted murder deserves to be sentenced for that crime, not for the completed crime of murder; due regard must always be given to the paramount sanctity our law accords to the value of human life and to the fact that an attempted murder does not involve the taking of a life. Yet when an all-but-completed act of first-degree murder fortuitously skirts death, inflicting grave and lasting injuries instead, there is sound reason to conclude that the offender convicted of attempted first-degree murder deserves a sentence falling closer to that which would have been appropriate for the completed crime than to that which would have been appropriate for a lesser form of assault.

Judge Schulz' sentencing remarks establish the judge's recognition of the significance of the fact that Rudden's victim had not been killed—that Rudden had committed and was to be sentenced for attempted murder, not murder. Nevertheless, in terms of both conduct and harm, Rudden's crime verged on a completed act of murder and unquestionably fell near the most serious extreme for attempted first-degree murder. Judge Schulz also recognized this fact. Under these circumstances, the judge was not clearly mistaken in declining to treat Rudden's crime as merely an aggravated case of first-degree assault.

■ Rudden further argues that his thirty-five-year term is excessive in light of *Sam v. State*, 842 P.2d 596 (Alaska App.1992). In *Sam*, another attempted first-degree murder case, we approved a sentence of forty-five years with fifteen years suspended. Our decision emphasized that, although a nominal first offender, Sam was awaiting sentencing on a prior felony assault charge when he committed the attempted murder. We also noted that Sam's motives for the attempted murder and the prior assault were "seemingly incomprehensible." *Sam*, 842 P.2d at 603.

Judge Schulz paid considerable attention to *Sam* in imposing Rudden's sentence, noting that the two cases were comparable in many respects. Rudden maintains, however, that Judge Schulz failed to recognize significant differences between the two cases. In particular, Rudden points out that Sam was awaiting sentencing on another felony assault charge when he committed his offense, whereas Rudden merely had three pending misdemeanor assault charges, which had not yet been resolved. Moreover, although Rudden has previously been convicted of a felony assault, that conviction occurred almost twenty years previously; the sentencing record is unclear as to whether the offense would amount to a felony under current law. Finally, Rudden notes that his own conduct was not as inexplicable and irrational as Sam's. In view of these distinctions, Rudden argues that Judge Schulz was clearly mistaken in sentencing him to a term of unsuspended incarceration that is five years longer than the unsuspended portion of the sentence Sam received.

Rudden's comparison of his case to Sam's misses the mark. The ultimate question in the present case is whether Rudden's thirty-five-year term is clearly mistaken. Comparison with similar cases is useful in resolving this question, but is not determinative. To determine whether Rudden's sentence is clearly mistaken, the precise issue we must resolve is whether the totality of circumstances peculiar to Rudden's case places his sentence within "a permissible range of reasonable sentences which a reviewing court, after an independent review of the record, will not modify[.]" *State v. McPherson*, 855 P.2d 420, 422 (Alaska 1993) (quoting *State v. Bumpus*, 820 P.2d 298, 305 (Alaska 1991)).

The fact that Rudden received an unsuspended term that is five years longer than Sam's under circumstances that were perhaps marginally more mitigated than those in Sam's case does not, in itself, provide a compelling basis for concluding that Rudden's sentence is clearly mistaken—that it exceeds the permissible range of sentences that are reasonable in light of the totality of the circumstances in this case. In *Sam*, while we approved as not clearly mistaken a sentence of forty-five years with fifteen years suspend-

ed, nowhere did we indicate that a longer term would have been impermissible.[2]

The record establishes that, in imposing Rudden's sentence, Judge Schulz was aware of and fully considered the distinctions between Rudden's case and Sam's. Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below was not clearly mistaken.

*McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.

2. Nor have we found other cases suggesting that Rudden's sentence is excessive. This court has not previously had occasion to contemplate an appropriate benchmark term for attempted first-degree murder. Indeed, *Sam* appears to be the only published sentence appeal reviewing an attempted first-degree murder sentence since the 1988 amendment making the offense an unclassified felony. In a number of unpublished decisions, however, we have reviewed sentences for the now unclassified felony of attempted first-degree murder. *See Sauve v. State,* Memorandum Opinion and Judgment No. 2837 (Alaska App., December 15, 1993) (50 years with 20 years suspended for attempted first-degree murder); *Jimenez v. State,* Memorandum Opinion and Judgment No. 2763 (Alaska App., August 11, 1993) (40 years for first felony offender convicted of attempted first-degree murder); *Pruitt v. State,* Memorandum Opinion and Judgment No. 2655 (Alaska App., March 31, 1993) (45 years with 10 years suspended for second felony offender convicted of attempted first-degree murder, first-degree assault, and third-degree assault); *Jackson v. State,* Memorandum Opinion and Judg-

ment No. 2565 (Alaska App., December 9, 1992) (36 years with 5 years suspended for third felony offender convicted of attempted first-degree murder, attempted first-degree assault, fourth-degree assault, and probation revocation for two burglaries).

Because these decisions are unpublished and have no precedential effect, citation to or reliance on them for any proposition of law would be inappropriate. *See* Alaska Appellate Rule 214(d). Nevertheless, viewed collectively as expressions of historical fact, our unpublished decisions are reflective of past sentencing practices; like other collections of empirical sentencing data, they can provide the necessary context for a rough estimate of how a given sentence compares to sentences previously imposed for a particular crime. When viewed in this manner, these decisions can play a helpful role as a resource for identifying seemingly exceptional sentences that warrant a heightened level of scrutiny. Viewing Rudden's case in the context of our past decisions, we find no cause for suspicion: Rudden's sentence appears unremarkable.