William D. GROSSMAN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8689.

Court of Appeals of Alaska.

Sept. 23, 2005.

---

22. *Sprague,* 590 P.2d at 417–18.

23. *Id.* at 418.

Paul E. Malin, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Michael Sean McLaughlin, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

William D. Grossman appeals his conviction and sentence for murder in the second degree. He first contends that Superior Court Judge Larry D. Card erred in instructing the jury on Grossman's liability as an accomplice. We conclude that the instruction was proper. Second, Grossman argues that his 99–year sentence is illegal because Judge Card imposed a sentence beyond the benchmark range, which we first set out in *Page v. State*, of 20 to 30 years for second-degree murder. Grossman argues that, under the United States Supreme Court's decision in *Blakely v. Washington*, Judge Card could not impose a sentence in excess of the *Page* benchmark range without giving Grossman a jury trial on the reasons justifying the greater sentence. We conclude that even if *Blakely* applied to sentencing for second-degree murder, Grossman's more than twenty prior convictions produced ample justification for his sentence.

*Factual background*

On the day of the offense, August 14, 2001, codefendants William D. Grossman and Erick David, two homeless men, were drinking vodka in an empty lot in Anchorage with three other homeless people—Larry Brown, Kevin Vanderway, and Kathy Tugatuk. Subsequent testing on all, besides Grossman (who was not located until days later), indicated that they were highly intoxicated.[1] Tugatuk and Vanderway testified that, due to their intoxication, they had little memory of the events of that day.

Vanderway claimed that while drinking with Grossman a few weeks before the incident, he had stolen a bottle of liquor from Grossman. When Grossman demanded that Vanderway replace it, he promised to do so. But, on August 14, Grossman, impatient with Vanderway's promises, hit Vanderway. Brown attempted to protect Vanderway from

---

1. David's blood-alcohol content was .167 percent, Vanderway's .284 percent, Tugatuk's .325 percent, and Brown's .394 percent.

Grossman, and Grossman then attacked Brown.

From an apartment building overlooking the empty lot, several residents witnessed the assaults. One witness, Ryan Sjostrom, saw two men, one matching Grossman's description (tattooed arms, blue vest, and dark hair), attacking a man on the ground, later identified as Brown. According to Sjostrom, Grossman was the primary aggressor. He said that Grossman beat the victim badly, stomping him and kicking him with the toes of his boots. Sjostrom testified that he called 911 but that it took nearly thirty minutes for the police to respond.

Sjostrom's girlfriend, Nana Lewis, also described seeing the assault from the same vantage point. She positively identified Grossman as the assailant. She testified that she had seen Grossman one week earlier, wearing the same clothing, in the same alley, arguing with a woman. She described Grossman as straddling Brown, punching him several times. She stated that Grossman would then get up, kick Brown, and then go back to punching him. When the ambulance arrived, Lewis saw Brown taken away by the paramedics. She testified that she was positive that the victim loaded into the ambulance was the person she had seen Grossman assaulting.

Like Sjostrom, Lewis also described a second assailant who attacked Brown as well as a second victim, later identified as Vanderway. She identified the second assailant, later identified as Grossman's co-defendant David, as taller than Grossman and apparently a Native. She testified that David appeared to kick Brown in the body but not the head. She stated that Grossman kicked Brown "like he hated him" but that David did not kick him as hard.

A third witness, Cassia Northbird, lived in a nearby apartment. She testified that she saw two men assaulting a third man in the lot. Northbird's description of the shorter assailant matched Sjostrom's and Lewis's description of Grossman. Northbird testified she saw the shorter assailant straddling the victim and choking him. She also saw a Native man kicking the victim while he was on the ground. She testified that both the shorter assailant and the Native man kicked, punched, and stomped the victim simultaneously. But unlike Sjostrom and Lewis, Northbird testified that the man taken away by the ambulance was not the same man she saw being beaten. However, she also testified that Vanderway was not the victim either.

Brown died of the injuries which he received in the beating. The State charged Grossman and David with murder in the second degree[2] for beating Brown to death. Additionally, the State charged Grossman with one count of assault in the fourth degree[3] for assaulting Vanderway. The two men were tried jointly in a trial conducted by Judge Card. At trial, Grossman denied ever assaulting Brown. He contended that the witnesses had seen him assault Vanderway, not Brown.

The jury convicted Grossman and David for the second-degree murder of Brown. They also convicted Grossman for the fourth-degree assault on Vanderway. Judge Card sentenced Grossman to a maximum term of 99 years of imprisonment for murder in the second degree and to a 1–year concurrent term for the assault. Grossman appeals his conviction and sentence.

*The accomplice liability instruction*

■ A person is guilty as an accomplice if he aids another person in committing the offense "with intent to promote or facilitate the commission of the offense."[4] In *Riley v. State*,[5] we held that when a person is charged as an accomplice for a crime that requires proof of a particular result, the government must prove that the person acted with the same culpable mental state that applies to the principal. This means that to convict Grossman as an accomplice in this case, the State had to show that Grossman acted with the intent to promote or facilitate the assault

2. AS 11.41.110(a)(1) & (2).

3. AS 11.41.230(a)(1).

4. AS 11.16.110(2).

5. 60 P.3d 204 (Alaska App.2002).

on Brown, and that Grossman acted with the culpable mental state set out in the second-degree murder statute: with the intent to cause serious physical injury to Brown or with manifest extreme indifference to the value of human life.[6]

In *Riley,* we stated that "[w]hen AS 11.16.110(2) speaks of a person's 'intent to promote or facilitate the commission of the offense', this phrase means the accomplice must act with the intent to promote or facilitate the *conduct* that constitutes the *actus reus* of the offense."[7] As we have stated, this means that the State had to prove that Grossman acted with the intent to promote or facilitate the assault on Brown. In the trial court, Grossman objected to the State's accomplice liability instruction because it read that to be liable the "accomplice must act with intent to promote or facilitate the *act or conduct* of the principal."[8] Grossman argued that the instruction was erroneous because it substituted "act or conduct" for the single word "conduct" which we used in *Riley.* Grossman argues on appeal that the instruction would allow the jury to convict Grossman as an accomplice even if he abetted David in landing only a single blow. He argues that since Brown was killed from a prolonged beating, the instruction allowed the jury to convict him on an insufficient factual showing.

 Grossman's argument is not valid. A person can be convicted as an accomplice for engaging in a single act. To convict Grossman as an accomplice, the State had to show that Grossman acted with the intent to promote or facilitate the beating of Brown. The State then had to prove that Grossman acted with the intent to cause serious physical injury to Brown or knowingly engaged in conduct manifesting an extreme indifference to the value of human life. The State did not have to prove that Grossman engaged in more than one act. Judge Card properly instructed the jury.

*Judge Card's imposition of a 99–year term of imprisonment did not violate Grossman's Sixth Amendment right to a jury as interpreted in Blakely v. Washington*

In *Page v. State,*[9] this court conducted a historical review of sentences for second-degree murder and, based on this review, we concluded that a defendant convicted of this crime should typically receive a sentence of 20 to 30 years to serve. This has become known as the *"Page* benchmark range."[10] Relying on *Page,* Grossman argues that Judge Card lacked the authority to sentence him to more than 30 years to serve unless the judge found aggravating factors. And, relying on the United States Supreme Court's decision in *Blakely v. Washington,*[11] Grossman argues that he had a right to trial by jury, and a right to demand proof beyond a reasonable doubt, regarding any and all factors that Judge Card might rely on as a justification for departing from the *Page* benchmark range.

 The answer to Grossman's argument is that, even if *Blakely* applied to the factors that justify an upward departure from the *Page* benchmark range, Grossman's numerous prior criminal convictions provide ample justification for a sentence above the 30–year mark.

 As we recently explained in *Edmonds v. State,*[12] a defendant's prior convictions constitute an exception to the *Blakely* rule. That is, a judge can consider and rely on a defendant's prior convictions without submitting the issue to a jury.

Grossman has more than twenty prior convictions, including two felonies and eleven prior convictions for assault. We have repeatedly recognized that a defendant's prior convictions—especially felony convictions—constitute a sufficient reason to impose a sentence of more than 30 years to serve for

---

**6.** AS 11.41.110(a)(1) & (2).

**7.** *Riley,* 60 P.3d at 221 (emphasis in original).

**8.** Emphasis added.

**9.** 657 P.2d 850 (Alaska App.1983).

**10.** *Id.* at 855.

**11.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**12.** 118 P.3d 17 (Alaska App.2005).

second-degree murder. For instance, in *Phillips v. State*,[13] we held that the defendant's sentence could properly exceed the *Page* benchmark range. We noted that Phillips was a third felony offender, and that the *Page* benchmark range "was intended to demarcate the range of actual imprisonment ('time to serve') that a sentencing judge should impose on a typical first felony offender convicted of a typical second-degree murder."[14] Similarly, in *Sam v. State*,[15] we held that the sentencing judge could properly impose a sentence that exceeded 30 years to serve because "the *Page* benchmark is meant to reflect the appropriate starting point for sentencing in second-degree murder cases involving first felony offenders," and because Sam "had already committed another felony assault, for which he was awaiting sentencing ... [making him] a first felony offender only in the most technical sense."[16]

Under Alaska sentencing law, Grossman's numerous prior convictions provided ample justification for a sentence exceeding the *Page* benchmark range of 20 to 30 years to serve. Therefore, even if *Blakely* applied to second-degree murder sentencings, Grossman's sentence would be lawful.

*Conclusion*

The judgment of the superior court is AFFIRMED.

COATS, Chief Judge, concurring.

*Judge Card's imposition of the 99–year term of imprisonment did not violate the United States Supreme Court's decision in Blakely v. Washington*

In *Page v. State*,[1] we conducted a historical review of sentences for murder in the second degree. Based on this historical review, we concluded that a person convicted of second-degree murder should typically receive a sentence of 20 to 30 years of imprisonment.[2] Relying on the *Page* guidelines, Grossman argues that 30 years of imprisonment was the maximum sentence that Judge Card could impose under the Supreme Court's recent decision in *Blakely v. Washington* without having a jury determine that aggravating factors authorized a greater sentence. In *State v. Gibbs*,[3] we summarized the *Blakely* decision as follows:

> In *Apprendi v. New Jersey*,[4] the United States Supreme Court held that, with the exception of a defendant's prior convictions, "any [disputed] fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[5] In *Blakely*, the Supreme Court clarified that, for purposes of *Apprendi*, the "statutory maximum" is the maximum term of imprisonment that a judge may lawfully impose *"solely on the basis of the facts reflected in a jury verdict or admitted by the defendant."*[6]

Grossman argues that, under *Blakely*, the jury verdict only authorized Judge Card to impose a sentence of up to 30 years of imprisonment. He contends that Judge Card could not impose a sentence beyond the 30–year *Page* guideline unless he relied on aggravating circumstances that had been proven to the jury beyond a reasonable doubt.

The short answer to Grossman's argument is that Judge Card was authorized by *Blakely* to consider Grossman's prior record in deciding to impose a sentence over the guidelines. Grossman has an extensive prior criminal record. He has well over twenty prior convictions. Eleven of these prior convictions are for assault; two of the prior convictions are felonies. *Blakely* does not preclude

---

**13.** 70 P.3d 1128 (Alaska App.2003).

**14.** *Id.* at 1143.

**15.** 842 P.2d 596 (Alaska App.1992).

**16.** *Id.* at 603; *see also Brown v. State*, 4 P.3d 961, 962–64 (Alaska App.2000).

**1.** 657 P.2d 850 (Alaska App.1983).

**2.** *Id.* at 855.

**3.** 105 P.3d 145, 147 (Alaska App.2005).

**4.** 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

**5.** *Id.* at 490, 120 S.Ct. at 2362–63.

**6.** *Blakely*, 124 S.Ct. at 2537 (emphasis in original) (citations omitted).

a sentencing court from considering a defendant's prior convictions.[7] So even if we accepted Grossman's argument, Grossman's prior convictions alone would have authorized Judge Card to exceed the *Page* guidelines and impose the maximum sentence without violating *Blakely.*

The majority of the court, having resolved the issue, would stop at this point. I would go further. The *Blakely* decision has created a great deal of uncertainty about sentencing in criminal cases. I think we should resolve the issues created by *Blakely* in an attempt to reduce this confusion when the answer is clear.

The *Page* guidelines are merely a tool to aid sentencing judges in imposing sentences and to facilitate appellate court review of these sentences. If a sentencing judge follows these guidelines, the defendant, the public, and a reviewing court should have a better understanding of why the judge imposed a particular sentence. These are important sentencing goals.

The Alaska Statutes provide that a defendant convicted of murder in the second degree "shall be sentenced to a definite term of imprisonment of at least 10 years but not more than 99 years."[8] That is the sentencing range that the jury's verdict authorized.

In *Apprendi*, the Supreme Court specifically stated that nothing in its opinion was meant to change the general rule allowing "judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this

nature in imposing sentence *within statutory limits* in the individual case."[9] The sentence imposed by Judge Card was within this range. Furthermore, as this court has previously explained, the *Page* benchmark did "not create fixed sentencing boundaries ... [rather] ... it [was] designed to 'provide assistance and guidance'... by furnishing a numerical 'starting point ... for individualized [sentencing] analysis in each case.' "[10]

As we have pointed out, we developed the *Page* guidelines by conducting a historical review of previous sentences for second-degree murder.[11] From this review we concluded that the typical sentence for second-degree murder fell within a range from 20 to 30 years.[12] The *Page* guidelines therefore provide a starting point for a sentencing court in a second-degree murder case. The purpose of establishing this starting point was in part to comply with the legislature's directive to sentencing courts to consider "the seriousness of the defendant's present offense in relation to other offenses."[13]

But we have emphasized that "benchmarks are meant only to provide a framework for individualized analysis in each given case, based upon [traditional] sentencing criteria...."[14] And we emphasized "that any sound reason may be relied on to differentiate one case from another."[15]

In *Allen v. State,*[16] we pointed out that parties often framed their arguments in terms of statutory aggravating and mitigating factors.[17] While we found this practice useful, we specifically noted that, in a sentencing for second-degree murder, a judge could rely on any sound reason to justify a sentence.[18] We generally do not review

7. *Edmonds v. State,* 118 P.3d 17 (Alaska App. 2005).

8. AS 12.55.125(b).

9. 530 U.S. at 481, 120 S.Ct. at 2358.

10. *Brown v. State,* 973 P.2d 1158, 1162 (Alaska App.1999).

11. *Page,* 657 P.2d at 855.

12. *Id.*

13. AS 12.55.005; *Williams v. State,* 809 P.2d 931, 935 (Alaska App.1991).

14. *Williams,* 809 P.2d at 933 (referring to sentencing criteria set out in *State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970) and AS 12.55.005).

15. *Id.* at 934.

16. 51 P.3d 949 (Alaska App.2002).

17. *Id.* at 960.

18. For an extensive discussion of the purpose of benchmark sentences, see *Williams,* 809 P.2d 931. For a discussion of the application of the *Page* guideline, see *Brown,* 973 P.2d 1158.

whether the sentencing court properly found aggravating or mitigating factors in imposing a sentence for murder in the second degree. This is because the aggravating factors and mitigating factors are not controlling in sentences for second-degree murder as they are when presumptive sentencing applies. A sentence for second-degree murder is governed by traditional sentencing criteria.[19]

We have therefore interpreted the *Page* guidelines as merely an aid to a sentencing judge to exercise typical sentencing discre-

tion rather than as a limit on the sentencing judge's authority. I would therefore state what I think is the obvious conclusion. The *Blakely* decision does not restrict the discretion of the sentencing judge to impose a sentence in excess of the *Page* guidelines.

19. *Id.*